No. 57,580

STATE OF KANSAS, *Appellee*, v. JACQUELINE L. OSBEY, *Appellant*.

(710 P.2d 676)

Opinion filed December 6, 1985.

*Blaise R. Plummer*, of Martin, Churchill, Overman, Hill and Cole, Chartered, of Wichita, argued the cause and *Janet S. Helsel*, of the same firm, was with him on the brief for appellant.

*Geary N. Gorup*, assistant district attorney, argued the cause, and *Clark V. Owens*, district attorney, and *Robert T. Stephan*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J.: Jacqueline (Jackie) L. Osbey was convicted by a jury on one count of murder in the first degree and on a second count of unlawful possession of a firearm. Osbey appealed claiming (1) the judge improperly instructed the jury, and (2) she was prejudiced when the judge failed to impose the sentence for count two at the time of sentencing for count one.

Testimony at trial established that Jackie was a victim of her husband Joel's violence throughout the two-year history of their marriage. Witnesses testified that on numerous occasions they

had observed Joel strike her, knock her down and on one occasion pull a knife on her. During the marriage she regularly appeared with her eyes swollen and black, and her body cut and bruised.

Jackie testified about their various altercations, including one where her husband had cut the tendons in her hands and leg, resulting in her being hospitalized for three weeks. She stated that Joel had threatened to kill her several times and, on one occasion while she was lying on the bed, he had pointed a shotgun at her and stated he was going to shoot her. Once when she had refused to give her husband money, he had attempted to run over her with his van.

After Joel was laid off from work, he would often have friends over to the house to drink and play cards during the day. One of Joel's "lady friends" who came over became involved in an altercation with Jackie, who subsequently hit the woman with a pistol. A complaint was signed and Jackie pleaded guilty to attempted aggravated battery. After being placed on probation, she gave her pistol to her brother and told him to keep it. Joel then began treating Jackie worse, because he knew she did not have a weapon and could not cause him any trouble while on probation.

On June 10, 1983, Jackie's father told her Joel had called him and had threatened to beat her up at work. That afternoon Shenina, Jackie's daughter, told Jackie that Joel had been drinking and had been to her apartment to retrieve the gun he had loaned her the previous week. She said that he was angry with Jackie and was going to the plant to "beat her ass."

After work, Jackie went to visit a friend, Lillie. Joel was there and again threatened to kill her. Returning home together, Jackie tried to be agreeable with Joel, because she knew no one else was in the house to protect her.

On June 11, 1983, Jackie attended a family gathering. While there, Jackie learned that Joel had attempted to have sexual intercourse with her sister. Later, as Jackie and her sister were leaving a friend's home, Joel drove up. Jackie told him she didn't want to be married to him any more, and that she just wanted him to move out.

Following that conversation, Joel went to Jackie's house where he removed some of his belongings. Later, at Lillie's

home, Joel told Lillie he was going to go back to Jackie's and move back in. He said he was not going to give up that easily, because he had put too much money and time into her house and it would be either "me or her." Joel showed Lillie the pistol he had obtained, and he repeatedly said that he was going to hurt Jackie, that he was going to kill her. Lillie later warned Jackie that Joel had a gun and cautioned her not to let Joel harm her.

Later that evening, Jackie went to a birthday party. Before she left, she asked her brother for her pistol which she told him she needed to protect herself from Joel. Returning home, she found Joel's van in the driveway. She entered the house and placed the unloaded pistol in a drawer. Joel came down the stairs and went outside. Jackie then went to the front door and asked if there was anything else inside he wanted. When he responded "No," she threw a wicker chair out toward his van and said, "Well, here's your chair." Joel became angry and told Jackie "I'm sick of this shit," picked up a shirt and some record albums from the van and approached the house. Closing the screen door and locking the main door, Jackie ran back to the drawer where she had placed the gun, retrieved it, loaded it and placed the revolver in her bra.

Joel unlocked the front door and started inside, still carrying the record albums. Jackie warned him to stay back and told him that she did not want to hurt him. Joel stated he did not want to hurt her either. Joel reached behind the albums that he was carrying. Fearing he was reaching for a weapon, Jackie fired all five bullets in the revolver. She then called for an ambulance. Joel had been hit by two bullets, one in the chest and one in the left abdominal area. He died from hypothermic shock caused by massive bleeding.

Officers who arrived at the scene found Joel's body next to a vehicle in the driveway. Record albums he had been carrying at the time of the shooting were scattered from the front porch to the driveway where he lay. The police found that Jackie's gun had been reloaded, though Jackie could not remember reloading it.

At the trial, Jackie testified she shot Joel because she was tired of being beaten. She said she was scared and she did not trust him anymore. Since Osbey claimed she was defending herself when she killed Joel, the judge instructed the jury on self-defense. The jury had some question regarding premeditation

and self-defense and requested clarification during its deliberations. They sent out the following written question:

"We would like a better definition as to what constitutes premeditation and how that would apply to this case.

"If this act is decided in the final few minutes, for protection, is it premeditated?"

The judge responded by instructing the jury to reread the instructions. The jury found her guilty of both charges, and Osbey appealed.

Osbey complains that the court erred by using PIK Crim. 2d 54.17 when instructing on self-defense. The PIK instruction uses the word "immediate," rather than the statutory word "imminent." K.S.A. 21-3211.

PIK Crim. 2d 54.17 provides:

"The defendant has claimed his conduct was justified as (self-defense) (the defense of another person).

"A person is justified in the use of force against an aggressor when and to the extent it appears to him and he reasonably believes that such conduct is necessary to defend himself or another against such aggressor's immediate use of unlawful force. Such justification requires both a belief on the part of defendant and the existence of facts that would persuade a reasonable person to that belief."

This instruction and the terms "immediate" and "imminent" are discussed at length in *State v. Hundley*, 236 Kan. 461, 693 P.2d 475 (1985). Under similar facts in *Hundley*, it was held that the PIK criminal self-defense instruction utilizing the word "immediate" instead of the statutory word "imminent" caused reversible error. *Hundley* was filed on January 11, 1985. The trial of this case was held in May of 1984. Osbey was sentenced July 12, 1984. The sentence was subsequently corrected on January 18, 1985. The defendant's appeal was filed on March 22, 1985.

The present case falls within the procedure set out in *State v. Choens*, 224 Kan. 402, 580 P.2d 1298 (1978), which holds that a later overruling decision should be applied retroactively to all similar cases pending at the time the decision was rendered. A conviction is not considered final until the judgment of conviction has been rendered, the availability of an appeal has been exhausted, and the time for any rehearing or final review has passed. This court determined *Hundley* prior to the appeal in this case. The facts in this case are sufficiently similar to those in *Hundley*, allowing Osbey to raise this issue on appeal.

The State claims that since the defendant requested that the self-defense instruction be given, she cannot complain when it

was used with the word "immediate" rather than with the word "imminent." The general rule that one who requests an instruction cannot on appeal complain of its use has been followed in a number of Kansas cases, including *Anderson v. Armour & Company*, 205 Kan. 801, 473 P.2d 84 (1970); *Atkins v. Morton*, 164 Kan. 626, 191 P.2d 909 (1948); *Schuette v. Ross*, 164 Kan. 432, 190 P.2d 198 (1948); *McGuire v. McGuire*, 152 Kan. 237, 103 P.2d 884 (1940).

Osbey did request a self-defense instruction, but requested a different instruction which was based upon *State v. Blocker*, 211 Kan. 185, 505 P.2d 1099 (1973). The self-defense instruction in *Blocker* used the term "imminent" and is basically the same as the instruction offered by the defendant in this case.

In *Hundley*, the defendant had also requested a self-defense instruction. She had also submitted an instruction similar to the one used in *Blocker* employing the word "imminent" rather than the word "immediate." The trial court, however, decided to go with the PIK instruction. This court did not find Hundley's request for a self-defense instruction prevented her from challenging the use of a similar self-defense instruction on appeal, because the instruction she requested differed from the one actually used.

As in *Hundley*, we conclude that the trial court's use of PIK Crim. 2d 54.17, which departs from the statutory language, impermissibly excluded from the jury's consideration the effect on the appellant of the history of violence toward her by the decedent. A defendant should not be prevented from challenging the self-defense instruction, although she requested one, where the instruction requested significantly differed from the one actually used. While only one word was involved, this word was critical to Osbey's perception of the need to defend herself. That one word was sufficient to establish reversible error.

The State further claims that since the defendant made no specific objection to the trial court's instruction, review on appeal is limited to whether the instruction is clearly erroneous. K.S.A. 22-3414(3) provides that no party may assign as error the giving or failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection

unless the instruction is clearly erroneous. *State v. Craven*, 215 Kan. 546, 550, 527 P.2d 1003 (1974).

The State contends that the instruction was not clearly erroneous because if the jury had believed the defendant, it would have found she was in immediate danger. The defendant argues, however, that it was clearly erroneous because it did not allow the jury to consider the victim's past history of violence in determining whether the defendant was in danger.

If the jury considered only the fact that Joel reached behind the record albums and the fact that he had not acted violently up to that point that afternoon, then it is understandable that they found Jackie guilty. If the jury believed that those were the only facts they could consider, then the instruction given was clearly erroneous.

The trial court's use of PIK Crim. 2d 54.17, which departed from the statutory language, impermissibly excluded from the jury's consideration the effect of the history of violence inflicted on the appellant by the decedent. Here, as in *Hundley*, the instruction given was clearly erroneous.

The defendant argues that even though she did not request a separate instruction on the burden of proof of an affirmative defense the trial court erred in failing to give the instruction. PIK Crim. 2d 52.08.

K.S.A. 22-3414(3) provides that no party may assign as error the giving or failure to give an instruction unless he objects thereto. This court has clearly followed the statute in a number of cases. *State v. Diaz & Altemay*, 232 Kan. 307, 316, 654 P.2d 425 (1982), held that failure to give an eyewitness instruction was not error when the instruction was not requested. *State v. Trujillo*, 225 Kan. 320, 324, 590 P.2d 1027 (1979), held that it was not error to fail to give an instruction on lesser offenses when no objection was made at trial. *State v. Bell*, 224 Kan. 105, 108, 577 P.2d 1186 (1978), held that failure to give limiting instructions was not error where there was no timely objection.

Even had the defendant objected to the court's failure to give the instruction, it does not seem likely that the jury would have returned a different verdict if such an instruction had been given. Instructions were given to the jury regarding defense of a person, reasonable doubt, the burden of proof, the definitions of the various legal terms relating to criminal intent, and that the prosecution's burden to prove such intent never shifts to the

defense. The fact that the court failed to use PIK Crim. 2d 52.08 will not be considered error when there were other instructions which made it clear that the burden of proof was on the State. Error cannot be predicated on the refusal to give specific instructions where those which were given cover and include the substance of those refused. *State v. Peoples*, 227 Kan. 127, 136, 605 P.2d 135 (1980); *State v. Wilson*, 221 Kan. 92, Syl. ¶ 3, 558 P.2d 141 (1976); *State v. Taylor*, 212 Kan. 780, Syl. ¶ 2, 512 P.2d 449 (1973).

The defendant, in addition, argues that, even viewing the evidence favorably to the prosecution, the evidence of premeditation is not sufficient to sustain the defendant's conviction of murder in the first degree.

The jurors obviously had some problems with the meaning of premeditation, since they sent out a question asking that it be clarified. From their question to the judge, it seems that they were unsure whether procuring and loading a revolver to be used in self-defense was the same as premeditation. While use of a deadly weapon is not alone sufficient to infer premeditation, it is one of the circumstances which may be considered in determining whether a homicide was committed with deliberation. *State v. Hamilton*, 216 Kan. 559, 534 P.2d 226 (1975).

Osbey did retrieve her pistol from her brother prior to the fateful altercation. When she saw Joel in the house, she did load the pistol. These facts certainly could infer premeditation by Osbey. There was sufficient evidence to establish premeditation, although if the term had been more fully explained to the jury, it might have reached a different conclusion.

On July 12, 1984, when sentenced on the murder count, the judge neglected to sentence Osbey on the second count for unlawful possession of a firearm. On January 12, 1985, the State moved for correction of sentence pursuant to K.S.A. 22-3504. The judge then sentenced her on the second count to a minimum term for the Class D felony, to run concurrent to the mandatory life sentence previously imposed pursuant to K.S.A. 1984 Supp. 21-4501a and K.S.A. 21-4618.

Osbey claims she was prejudiced when she was resentenced on January 18, 1985, since (1) she was not resentenced to all the counts at one time, (2) she was denied the right to make a statement on her own behalf pursuant to K.S.A 22-3424(4), and

(3) she was not informed of her right to appeal, as required by K.S.A. 22-3424(5), at the second sentencing. She contends that the court's failure to sentence on the second count of the information should be deemed an acquittal or discharge by the trial court. The State contends that the defendant was not prejudiced, because the second sentence runs concurrent to the life sentence.

The general rule is stated in 24 C.J.S., Criminal Law § 1564(1):

"Generally sentence may not be imposed in part and the imposition of the remainder deferred to a future day or term. Thus, where the court pronounces sentence as to one count of an indictment, it loses jurisdiction to impose sentence on the other counts at a subsequent term even though there has been a continuance, and a fortiori where there has been none."

See also *People v. Garland*, 215 Cal. App. 2d 582, 30 Cal. Rptr. 437 (1963); *McArthur v. State*, 330 So. 2d 548 (Fla. Dist. App. 1976).

Other courts have found that where a defendant has never been legally sentenced, a proper sentence may later be imposed. In *Com. ex rel. Michelotti v. Ashe*, 162 Pa. Super. 18, 56 A.2d 313 (1948), the court had sentenced the defendant on charges of burglary and receiving stolen goods. Within the same term, the sentences were declared invalid. After the term had expired, Ashe was resentenced. Ashe claimed those sentences were also invalid. The court determined that where an invalid or void sentence has been imposed, the defendant had never been legally sentenced, and proper sentence could be imposed at a later term.

This court has not ruled specifically on this issue. In *State v. Woodbury*, 132 Kan. 22, 294 Pac. 928 (1931), the defendant appealed from a conviction and improper sentences for embezzlement on ten of the 31 counts charged in the information. The court affirmed the judgment, but the cause was remanded to the district court with instructions to resentence the defendant because the sentences on seven of the counts were improper. The district court resentenced the defendant on all ten counts. On rehearing at 133 Kan. 1, 298 Pac. 794 (1931), this court held that where a defendant is convicted on several counts of an information, the judge should pronounce a single judgment declaring the full measure of punishment to be imposed for all such offenses.

In Kansas, sentencing of an individual is strictly controlled by statute. K.S.A. 21-4601 requires a judge to take into consideration the individual characteristics of one convicted. K.S.A. 1984 Supp. 21-4603 states the authorized dispositions in sentencing an individual, which are: (1) commit the defendant to the custody of the secretary of corrections; (2) impose a fine; (3) release the defendant on probation subject to such conditions imposed by the court; (4) suspend the imposition of the sentence; or (5) impose any appropriate combination of the authorized dispositions. None of the authorized dispositions allows a judge to intentionally or inadvertently fail to impose one of the statutory dispositions.

The failure of the judge to impose a specific term when sentencing the defendant to the secretary of corrections for confinement is an "illegal sentence" within the meaning of K.S.A. 22-3504(1). The failure of the judge to state the term of the sentence the defendant was required to serve in count two was inadvertent and not prejudicial to the defendant. The judge properly imposed the sentence when the error was brought to his attention. Where a person convicted of a crime has never been legally sentenced, a proper sentence may later be imposed. Osbey's claim is without merit.

Osbey stipulated that she had been convicted of the offense of attempted aggravated battery with a firearm. During the trial, Osbey testified that she had possession of the pistol and explained why she possessed the gun. The defendant's conviction and the judge's sentence for unlawful possession of a firearm were supported by substantial, competent evidence.

The trial court's judgment and sentence for the offense of unlawful possession of a firearm is affirmed. The conviction and sentence for the offense of murder in the first degree is reversed and remanded for a new trial in accordance with this opinion.