**Theodore Abbott JONES, Petitioner,**

v.

**Gary STOTTS, et al., Respondents.**

**No. 93–3193–DES.**

United States District Court, D. Kansas.

July 13, 1994.

Michael S. Holland, Russell, KS, for petitioner.

Kyle G. Smith, Kansas Bureau of Investigation, Topeka, KS, for respondents.

### *MEMORANDUM AND ORDER*

SAFFELS, District Judge.

This matter is before the court on a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 by an inmate in the El Dorado Correctional Facility, El Dorado, Kansas.

On May 27, 1986, the petitioner was charged in the District Court of Russell County, Kansas, with (1) first degree murder, contrary to K.S.A. 21–3301, a class B

felony; (2) aggravated battery, contrary to K.S.A. 21–3414, a class C felony; (3) aggravated weapons violation, contrary to K.S.A. 21–4202, a class E felony; and (4) possession of stolen property of a value of more than $150, contrary to K.S.A. 21–3701, a class E felony. The trial commenced on October 20, 1986. Prior to going to trial the charges of aggravated weapons violation and possession of stolen property were dismissed. On October 24, 1986, the jury returned a verdict of guilty of murder in the second degree, a violation of K.S.A. 21–3402, a class B felony, and attempted involuntary manslaughter, a violation of K.S.A. 21–3403, a class D felony.

On May 5, 1987, sentence was imposed with movant to serve not less than 12 years and the maximum of which shall not be more than life imprisonment, for violation of K.S.A. 21–3402, murder in the second degree, a class B felony. Case number 86–CR–67.

On this same date sentence was imposed with movant to serve not less than two years and the maximum of which shall not be more than seven for violation of K.S.A. 21–3302, attempted voluntary manslaughter, as defined by K.S.A. 21–3403, a class D felony. Case number 86–CR–66. Sentence in 86–CR–66 is to run concurrent with the sentence imposed in 86–CR–67, for a controlling sentence of 12 years to life.

On April 14, 1988, petitioner filed a direct appeal to the Supreme Court of the state of Kansas, Docket No. 87–61375–S. On January 20, 1989, the Kansas Supreme Court affirmed petitioner's convictions, 768 P.2d 307.

On July 3, 1991, petitioner filed a petition for habeas corpus pursuant to 60–1507 with the District Court of Russell County, Kansas. On September 5, 1991, petitioner's motion for habeas corpus and new trial was denied by the district court.

On March 3, 1992, petitioner appealed his denial of motion to the Court of Appeals of the state of Kansas, Docket No. 91–67310–A. On November 13, 1992, the court of appeals filed their decision affirming the district court's decision.

On December 23, 1992, petitioner then filed a petition for review with the Supreme Court of the state of Kansas. The Kansas Supreme Court subsequently denied petitioner's review.

## STATEMENT OF FACTS

On May 24, 1986, Theodore Abbott Jones, who had just recently arrived in Russell, Kansas, attended a birthday party for Darren Holloway. Though Jones was specifically asked by Mary McGinnis (mother of Darren Holloway) not to carry a gun while at this party, Jones nevertheless carried a .38 caliber revolver concealed in the waistband of his pants.

During the evening, an altercation occurred between Jones and Verna Inks and her son Jeffrey Inks. During this altercation, Jones' pistol was fired several times, killing Jeffrey Inks and severely wounding Verna Inks. Testimony revealed that just prior to the shooting, Jones pointed at Verna and Jeffrey Inks and stated that he was going to, "Pop all them motherfuckers in the ass."

Furthermore, Verna Inks testified that Jones had been begging Roosevelt Henderson, Verna Inks' common law husband, for money. When Verna Inks told Jones to stop, Jones told Henderson, "You slimy nigger, I'll get you, your bitch and your son."

Following the shooting incident, Jones fled the scene and was eventually confronted by Sergeant Carroll Christian of the Russell County Sheriff's Office. Sergeant Christian proceeded to question Jones about Jones' identity and his presence on the porch of a house he did not own. Sergeant Christian then informed Jones that Jones matched the description of the shooter given by people at the scene of the shooting. Jones was then asked to accompany Sergeant Christian back to the scene. Jones obliged and willingly returned to the scene of the shooting. At the scene, Jones was identified by Mary McGinnis as the shooter. Jones was then arrested, read his *Miranda* rights and transported to the Russell County Sheriff's Office.

At trial, Jones waived his Fifth Amendment right not to testify and took the stand in his own behalf. He testified that after

some bickering between Verna Inks and himself, Jeffrey Inks, (the deceased), lunged at him, and Verna Inks attempted to hit him with a beer bottle. Jones further testified that someone grabbed him from behind. Jones stated that someone tried to grab the gun concealed in his waistband and that his hand was on the gun and his finger was close to the trigger. He claimed that the trigger was pulled by some pressure being applied to his hand by others who had theirs hands on the gun. Jones testified that the gun accidently discharged during the fight, and that he did not intentionally pull the trigger.

The jury convicted Jones of second degree murder and attempted involuntary manslaughter.

## I. DID THE COURT ERROR IN ALLOWING SERGEANT CHRISTIAN TO TESTIFY AS TO DEFENDANT'S STATEMENTS MADE PRIOR TO *MIRANDA* WARNING?

■ Petitioner contends that the admission of his exculpatory statement made on the porch prior to receiving the *Miranda* warnings from Sergeant Christian was erroneous. The statement consisted of Jones claiming that he was not present at the party but in bed with Terry Holloway, the woman Jones was with when first confronted by Sergeant Christian. Jones further argues that this statement tainted his subsequent consistent statements at the sheriff's office, the later inconsistent admission of his participation in the shooting, and his subsequent videotaped statement. However, each of these subsequent statements was given after the defendant had received the *Miranda* warnings.

In *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, the United States Supreme Court stated in pertinent part that:

[T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by a law enforcement officer after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. 384 U.S. at 444, 86 S.Ct. at 1612.

*Miranda,* however, does not stand for an absolute proposition where a law enforcement officer may never ask a citizen any question without previously informing the citizen of his constitutional rights, e.g. the right to remain silent. And as the *Miranda* court observed, "[g]eneral on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process is not affected by our holding. It is an act of responsible citizenship for individuals to give whatever information they may have to aid in law enforcement." 384 U.S. at 477–78, 86 S.Ct. at 1629–30.

The facts show that Sergeant Christian commenced a search of the surrounding neighborhood after being given a description of the suspect who was supposedly involved in the shooting. At 2 a.m., Sergeant Christian located Jones and Terry Holloway sitting on the front porch of a residence a block and a half from the shooting site. As Sergeant Christian approached the pair on the porch, he recognized the female subject as Terry Holloway, a local girl. Sergeant Christian, however, did not recognize the male subject. As Sergeant Christian approached, the male subject rose and came towards him. Sergeant Christian asked the male subject to identification and the male subject responded that he did not have any with him. The male subject was then asked his name and he said that his name was Ted Jones and that he lived in Hays, Kansas.

At this point, Sergeant Christian informed Jones that there had been a shooting and that he matched the general description given by witnesses at the party. It was then requested of Jones to accompany Sergeant Christian back to the shooting scene.

Jones' testimony concurs with Sergeant Christian, to wit:

He said there was a party and that he would like to take me back over to the party because I fit the description of a man that was given and I said okay.

Furthermore, Sergeant Christian testified that when he informed Jones that there had

been a shooting Jones stated, "... that he had not been at the party, he had no knowledge of any shooting, and that he and Terry Holloway had been in bed together just prior to my seeing them."

Sergeant Christian also inquired as to what Jones was doing on the porch and whether or not he lived there. Jones responded that he did not live at the residence and that he had no reason for being on the porch.

Jones agreed to return to the shooting site with the officer. At the scene, Jones was identified by witnesses as the person known as Ted Jones and that he had been the person who had done the shooting.

Sergeant Christian testified, "At the time he was placed under arrest and advised of his *Miranda* warning."

It is clear that Sergeant Christian's initial fact finding process at the porch was not custodial in nature requiring him to give the requisite *Miranda* warning. *State v. Bohanan,* 220 Kan. 121, 551 P.2d 828 (1976). Rather, it was general on-the-scene questioning which is not affected by *Miranda.*

Moreover, Jones' alibi statement to Sergeant Christian was neither elicited by the type of coercive questioning contemplated by *Miranda,* nor the product of an improper custodial interrogation. The alibi statement made by Jones was spontaneous and voluntary.

Furthermore, nowhere in Jones' testimony did he state that Sergeant Christian advised him that he felt that he was involved in the crime. The state court found from the evidence that this was not a custodial interrogation requiring a *Miranda* warning and this is supported by the record.

Therefore, there was no taint to the subsequent statements Jones made after having been informed of his rights.

The court finds that the court did not error in allowing Sergeant Christian to testify as to petitioner's statements made prior to *Miranda* warning and that this testimony did not taint the subsequent statement Jones made after being advised of his *Miranda* rights.

## II. WAS PETITIONER DENIED EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE FOURTEENTH AND SIXTH AMENDMENTS TO THE UNITED STATES CONSTITUTION?

The petitioner has alleged that he was denied effective assistance of counsel during his jury trial because his attorney failed to (1) object to a proposed jury instruction; (2) request a specific PIK criminal instruction, and (3) file a motion in limine.

The United States Supreme Court has stated that there is a two part standard for evaluating claims of ineffective assistance of counsel. First, "The defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland v. Washington,* 466 U.S. 668 at 687–688, 104 S.Ct. 2052 at 2064, 80 L.Ed.2d 674 (1984). Second, "The defendant must show that there is a reasonable probability that but for counsel's unprofessional errors, the result would have been different." *Strickland v. Washington,* 466 U.S. at 694, 104 S.Ct. at 2068.

The court must consider the evidence in its entirety that is presented before the judge or the jury when determining a claim of ineffectiveness. It is therefore incumbent upon petitioner to do more than just read the record and now determine that had things been handled differently by counsel it is likely the outcome would have been different.

Here, petitioner has not shown that there is any reasonable probability that but for any errors, the result of the proceeding in this particular case would have been any different. And when viewed in its entirety, this case clearly shows that the verdict rendered by the jury was indeed the proper verdict.

The petitioner alleges that he was prejudiced by the jury instruction which used the word "immediate" rather than "imminent."

The jury was given the following instruction as to self-defense:

The Defendant has claimed his conduct was justified as self-defense. A person is justified in the use of force against any

aggressor when and to the extent it appears to him and he reasonably believes that such conduct is necessary to defend himself or another against such aggressor's immediate use of unlawful force. Such justification requires both a belief on the part of Defendant and the existence of facts that would persuade a reasonable person to that belief.

A jury charge in a state trial is normally a matter of state law and is not reviewable on federal habeas corpus absent a showing that the alleged errors were so serious as to deprive the defendant of a federal constitutional right. *U.S. ex rel., Smith v. Montanye,* 505 F.2d 1355 (2nd Cir.1974), *cert. denied* 423 U.S. 856, 96 S.Ct. 106, 46 L.Ed.2d 81.

Petitioner has failed to show how the alleged error was so serious as to deprive him of a federal constitutional right.

In this particular case the word "immediate" rather than the word "imminent" was used in an instruction given to the jury regarding the use of force in the defense of a person. Under particular facts it has been held that the use of the word "immediate" rather than the word "imminent" constituted reversible, but not constitutional, error. *State v. Hundley,* 236 Kan. 461, 693 P.2d 475 (1985). However, when comparing the circumstances in this case to those in the *Hundley* case, it is readily apparent that these two cases are distinguishable.

In the *Hundley* case the defendant was a wife who had been continually abused by her husband over a period of ten years and lived in constant fear of violence. However, there was no immediate threat; so the temporal distinction between "immediate" and "imminent" in that case became significant.

Under the facts of this case, the distinction between the two words has no significance. And there is certainly no constitutional significance.

Here, Jones had only been in Russell approximately three days prior to the shooting incident. And through studying Jones' testimony, it is questionable as to whether Jones was in fact in any imminent danger. Throughout Jones' testimony he never mentioned that he had any longstanding or perceived threat.

Moreover, it can be questioned as to whether there was any belief in imminent danger as the testimony shows that Jones "hocked" his gun during the gambling at Sammie Allen's house so as to remain in the dice game. This action would appear inconsistent with a belief that there was a pending imminent threat.

In this case the use of the word "immediate" was believed to be a word that was better understood with regard to the circumstances in this case. The word "imminent" described a situation where there would exist a building up of fear over an extended period of time. Nothing in this case goes to show that word "imminent" is the more applicable word.

Furthermore, the record does not indicate that Jones had any perceived threat or fear from anyone in the Ink's family prior to or during the party. The only perceived threat was the "immediate" threat from Jeff Inks, the deceased, and the unknown individual who allegedly grabbed Jones from behind during the struggle.

Therefore, under the facts and circumstances in this case, the use of the word "immediate," in substitution for the word "imminent," was not improper and there is no showing the choice of word would have changed the outcome of the trial nor did it prevent Jones from receiving a fair trial.

Petitioner alleges that failure of petitioner's attorney to request a certain PIK criminal instruction (52.08) over another was a basis for his allegation of ineffective counsel. An examination of the record shows this to be totally without merit.

The Kansas Supreme Court has held that, "Error cannot be predicated upon the refusal to give certain instructions if those given cover and include the substance of those which are refused." *State v. Taylor,* 212 Kan. 780, 512 P.2d 449 (1973). This is a question of state law and the Kansas courts have concluded that the substance and essence of PIK 52.08 is included in that of PIK

52.02 as set forth in the instructions given by the trial court.

Furthermore, the failure by the court to use PIK criminal instruction 52.08 will not be considered error when other instructions were given by the court which clearly pointed out that the burden of proof was placed upon the state. *State v. Osbey*, 238 Kan. 280, 710 P.2d 676 (1985).

█ Petitioner further claims that trial counsel's failure to file a motion in limine pertaining to a videotaped statement of petitioner constituted ineffective assistance of counsel.

Petitioner has failed in his attempt to provide any legitimate reason that this tape should be excluded from evidence in this case. Therefore, the fact that trial counsel failed to file a motion in limine does not constitute ineffective assistance of counsel.

Petitioner has filed a motion to supplement brief and has cited Kansas Supreme Court case entitled *State v. Hernandez*, 253 Kan. 705, 710–13, 861 P.2d 814 (1993). Petitioner has not attempted to show nor can the court find how this case would in anyway effect the court's decision in this case.

An evidentiary hearing is not required to decide this case.

The petitioner herein does not present a basis for federal habeas relief as there is no showing of a denial of any federally protected statutory or constitutional rights and the court so finds.

**IT IS THEREFORE BY THE COURT CONSIDERED, ORDERED, ADJUDGED AND DECREED** that the petition for writ of habeas corpus herein is denied.