Johnson, J.,
dissenting: I dissent. I can understand the majority’s belief that granting a sentencing judge tire authority to impose a sentence to run consecutive to a prior sentence imposed in a different case, in a different county, on a different day, by a dif *293 ferent judge could fit within die overall statutory sentencing scheme in Kansas. But if the majority is truly convinced that the legislature intended for a sentencing judge to have that discretion, our most recent caselaw provides only two available avenues: (1) Find the consecutive sentencing authority through a reasonable interpretation of the statutory language; or (2) if the intended provision cannot be found in the statutory language, let the legislature remedy its omission.
“ ‘[A]ppellate courts cannot delete vital provisions or add vital omissions to a statute if the legislature failed to enact the change as intended under any reasonable interpretation of tire language used, regardless of the legislature’s intention. Only the legislature may remedy these types of error.’ ” (Emphasis added.) Eastman v. Coffeyville Resources Refining & Marketing, 295 Kan. 470, 476, 284 P.3d 1049 (2012) (quoting Ft. Hays St. Univ. v. University Ch., Am. Ass'n. of Univ. Profs, 290 Kan. 446, 464-65, 228 P.3d 403 [2010]).
The majority hints at finding statutory support in the language of K.S.A. 21-4608(h) but apparently abandons that effort because the parties did not argue the ambiguities of the provision. That position is somewhat curious, given that the State urges us to affirm based on State v. Chronister, 21 Kan. App. 2d 589, 903 P.2d 1345 (1995), which in turn relied upon K.S.A. 21-4608(h), as will be discussed later.
Similarly, the majority declines to take the straightforward tack of using the language of K.S.A. 2006 Supp. 21-4720(b) as a conduit for its perceived legislative intent that a sentencing judge in one Kansas county has the authority to impose a sentence consecutive to a sentence previously imposed in another Kansas county. As tire majority recites, the first sentence of that subsection states: “The sentencing judge shall otherwise have discretion to impose concurrent or consecutive sentences in multiple conviction cases.” (Emphasis added.) K.S.A. 2006 Supp. 21-4720(b). The majority eliminates that sentence as a source of statutory authority in this case because our prior caselaw, e.g., State v. Bolin, 266 Kan. 18, 19, 968 P.2d 1104 (1998), State v. Koehn, 266 Kan. 10, 17, 966 P.2d 63 (1998), and State v. Roderick, 259 Kan. 107, 113-14, 911 P.2d 159 (1996), has defined the phrase “multiple conviction case” as being multiple counts under one charging document. Those *294 cases arose under a different context, and one analytical path would be to limit their effect to the actual holdings in the respective case, much as the majority attempts to do with those cases that declare that criminal sentencing is strictly controlled by statute. But I believe there are reasons, including a subsequent statutory change, which indicate that the legislature intended multiple conviction cases under K.S.A. 2006 Supp. 21-4720(b) to be something different than the “multiple sentences” scenarios under K.S.A. 21-4608. Otherwise, this would be a concurring opinion. But my point is that a route more consistent with our recent analytical framework of finding authority within the statutory language was available to, but rejected by, the majority.
Instead, the majority manufactures a heretofore unknown paradigm, whereby the courts can discern a common-law sentencing authority that can be applied to partially modify or intensify the statutory sentence imposed, so long as the added common-law component has not been explicitly prohibited by tire statutory language. Then, making that hybrid system even more curious, the majority apparently looks to legislative intent to determine the comnron-law component that can be added to tire statutorily authorized sentence.
Specifically, the majority says that the sentencing statutes, do not expressly address the situation presented here, i.e., the statutes are silent; that such legislative silence creates an ambiguity; and that “[wjhen faced with an ambiguity, courts must attempt to ascertain legislative intent and in doing so may look to canons of construction, legislative history, the circumstances attending the statute’s passage, the purpose to be accomplished, and the effect the statute may have under the various constructions suggested.” 302 Kan. at 268.
I am confused as to why the majority must endeavor to ascertain legislative intent if it is going to fill the statutory gap with the common law. The common law is defined as “[tjhe body of law derived from judicial decisions, rather than from statutes or constitutions; Caselaw.” Black’s Law Dictionary 334 (10th ed. 2014). The Kansas Legislature can abrogate the common law, but it cannot make Kansas common law. Moreover, the majority’s thought process of using *295 statutory silence to trigger an attempt to ascertain legislative intent in order to determine the common law that then can be applied to fill the gap in the legislature’s statutory scheme left by legislative silence strikes me as dizzyingly circular.
Further, I am unclear as to how to apply the canons of construction to silence. For instance, how does one give common words their ordinary meanings, when there are no words? How does one Consider the effect the statute may have under various constructions of silence? Perhaps more importantly, if it is necessary to construe statutory silence to ascertain legislative intent, then the majority’s later declaration that the rule of lenity is inapplicable because there is “no statute to construe in Quested’s favor” is inconsistent, at best. 302 Kan. at 284; see State v. Thompson, 287 Kan. 238, 249, 200 P.3d 22 (2009) (statutory silence and ambiguity is construed in favor of the defendant pursuant to the rule of lenity). If the majority can construe the statutory silence on consecutive sentencing in favor of the State’s position, is that not construing the silence-creating statutory ambiguity against the defendant?
In short, it appears to me that all of the majority’s discussion of legislative intent is superfluous and unavailing when considering its proposition that a district judge can invoke common-law sentencing authority wherever it is not prohibited by statute. The question is whether the majority’s new hybrid sentencing scheme can withstand closer scrutiny. I think not.
The majority is apparently perplexed that our sentencing statutes appear to provide disparate treatment to a defendant whose crime spree crossed county lines. It points out that if Quested had been convicted for all the crimes in one case in one county by one judge, K.S.A. 2006 Supp. 21-4720(b) would have explicitly authorized consecutive sentencing. Pointedly, however, all but one member of the majority was involved in the recent unanimous decision in State v. Ardry, 295 Kan. 733, 736-37, 286 P.3d 207 (2012), which rejected the Court of Appeals’ policy argument that enforcing the literal language of K.S.A. 22-3716(b) to permit the imposition of a lesser sentence for those whose probation is revoked when such reduction was unavailable to a defendant who did not violate pro *296 bation would “allow similarly situated defendants to receive different sentences.” The disparate result argument did not deter the Ardry court from giving effect to what the legislature actually said. Then, Ardry quite plainly and unequivocally explained that “only the legislature may decide whether the statutory sentencing scheme contains inequitable inconsistencies.” 295 Kan. at 737. Apparently the current court majority has changed its mind about which branch of government must fix a perceived inequitable inconsistency in statutory sentencing provisions. I stand by the holding in Ardry.
A compelling reason for our prior judicial restraint is that, if the court guesses wrong about what the legislature truly intended to say, we have invaded the province of the legislative branch. Thus, for at least three-fourths of a century, this court has declined to judicially legislate, even to “fix” what some might have perceived to be a legislative gap, oversight, or silence. See Russell v. Cogswell, 151 Kan. 793, 795, 101 P.2d 361 (1940) (“No matter what the legislature may have really intended to do, if it did not in fact do it, under any reasonable interpretation of the language used, the defect is one which the legislature alone can correct.”); accord State v. Prine, 297 Kan. 460, 475, 303 P.3d 662 (2013); State v. Comprehensive Health of Planned Parenthood, 291 Kan. 322, 357, 241 P.3d 45 (2010); State v. Urban, 291 Kan. 214, 216, 239 P.3d 837 (2010); State v. Horn, 291 Kan. 1, 12, 238 P.3d 238 (2010); State v. Sandberg, 290 Kan. 980, 989, 235 P.3d 476 (2010); State v. Johnson, 289 Kan. 870, 879, 218 P.3d 46 (2009); Kenyon v. Kansas Power & Light Co., 254 Kan. 287, 293, 864 P.2d 1161 (1993); Harris v. Shanahan, 192 Kan. 183, 196, 387 P.2d 771 (1963); In re Tax Appeal of Graceland College Center, 40 Kan. App. 2d 665, 679, 195 P.3d 245 (2008).
The majority says that it feels compelled by its perceived “practical necessity” to manufacture its new hybrid sentencing paradigm “in this limited and unique circumstance.” 302 Kan. at 285. I read that explanation as merely a feeble attempt to excuse breaking the rules to attain a desired result. The ostensible compulsion to take a limited and unique analytical pathway is apparently found in the majority’s declaration (unsubstantiated by any evidence in die rec *297 ord) that district courts in Kansas have been relying on the result in Chronister for 20 years.
To the extent the majority is fearful of opening the floodgates of litigation, I would respond with the words of retired United States Supreme Court Justice John Paul Stevens: “The fair administration of justice is never cost-free.” Linda Greenhouse, Speaking Truth to the Supreme Court, N.Y. Times, April, 16, 2015, http:// www.nytimes.com/2015/04/16/opinion/speaking-truth-to-the-supreme-court.html.
To the extent the majority is suggesting that we must make an exception to our construction canon that forbids adding vital omissions to the sentencing statutes (here, under the guise of applying common law) in order to promote the system-wide stability and continuity ordinarily achieved through the doctrine of stare decisis, I draw the majority’s attention to numerous recent decisions in which this court has eschewed longtime precedent that was in derogation of plain-language statutory interpretation. See, e.g., Casco v. Armour Swift-Eckrich, 283 Kan. 508, 522-25, 154 P.3d 494 (2007) (interpreting workers compensation statutes to abrogate parallel injury rule relied upon by trial courts for 76 years). Those breaks with precedent were justified because they rectified past judicial legislating in contravention of plain statutory language and our rules of construction. I decline to crawfish from this court’s recent efforts to avoid just making up things as we go.
More importantly, I believe that system-wide stability and continuity is best maintained when this court consistently follows its logical, tried-and-true analytical framework, applying it to all issues in all cases, regardless of the individual result that might obtain in a particular case. The result desired by a majority of this court in an individual case should not change how the law works in Kansas. Cf. Leaming v. U.S.D. No. 214, 242 Kan. 743, 761, 750 P.2d 1041 (1988) (Herd, J., dissenting) (“Result-oriented justice is government of men and not of law, directly contrary to the concept of the rule of law.”).
Particularly troubling to me is the majority’s mischaracterization of our past cases and its use of distorted dicta, taken out of context. For instance, contrary to the majority’s declaration, State v. Finch, *298 75 Kan. 582, 89 P. 922 (1907), did not consider the effect of legislative silence, but rather the case struggled to give effect to legislative intent when faced with restrictive statutory language. In that case, the defendant was convicted of manslaughter and sentenced to a prison term. While free on appeal bond, Finch committed other felonies, for which he was convicted and sentenced to another prison term. The imprisonment in the second case was “to commence at the expiration of his term in the former case.” 75 Kan. at 583. The appeal in the second case was “whether this cumulative [consecutive] sentence can be sustained.” 75 Kan. at 583. The court noted die contention “that under the common law die rule is that successive sentences are concurrent and not cumulative,” and “that a cumulative sentence in this state must be justified, if at all, under section 5695 of die General Statutes of 1901.” 75 Kan. at 583-84.
The State’s problem with the consecutive sentence statute in Finch was that it provided for consecutive sentences for two or more offenses at the same term of court, but Finch’s second sentence was at a subsequent term of couit. But the Finch court noted that the legislative policy was to increase punishment for multiple offenses “without regard to strict technicality,” so that die courts must “conform the procedure as to make the purpose of the [statutory] law effective.” 75 Kan. at 584. In other words, the Finch court broadly construed the statute authorizing consecutive sentencing to apply to Finch’s multiple sentences by considering the “same term of court” language to be a technicality that it must overlook in order to give effect to the intent of die legislative enactment. 75 Kan. at 584. To me, giving effect to the legislative intent of a statute is different than applying the common law.
Likewise, in Beck v. Fetters, 137 Kan. 750, 22 P.2d 479 (1933), Beck was sentenced to the county jail for violating the liquor laws and, while an appeal was pending in that first case, he committed another offense. The sentencing court in the second case did not refer to die first case or state whether the second sentence was to be served concurrently or consecutively to the first sentence. The issue on appeal was stated as follows: “ Where two sentences are imposed by the same judge in the same court one after the other, *299 at different terms, and there is nothing in the sentences as to whether they are to run consecutively or concurrently to each other, will the sentences run consecutively or concurrently?’ ” Beck, 137 Kan. at 751. The Beck court noted that “[t]he common-law rule and many of the earlier decisions following the rule are to the effect that if several sentences of imprisonment are imposed upon a person, covering the same period of time, they will run concurrently unless the court expressly directs that they be served consecutively.” 137 Kan. at 751-52. The opinion then quoted the statute providing for consecutive sentencing where a person is convicted of two or more offenses before sentence is pronounced on any of them, R.S. 62-1512, and noted that the provisions “indicate the legislative purpose to depart from the rule of the common law.” 137 Kan. at 752. In other words, Beck had no need to ruminate on whether the sentencing judge had a common-law authority to impose a consecutive sentence, because there was statutory authority. The only question was whether the statutorily authorized consecutive sentence for the second crime was applicable in the absence of a judicial pronouncement to that effect.
Beck concluded that the statutorily authorized consecutive sentence was mandatory, declaring that “the court must render judgment in conformity with the statutory policy and is without authority to adjudge that it shall run concurrently.” 137 Kan. at 752-53. That declaration not only refutes the majority’s suggestion that the court was acknowledging a common-law authority, it also torpedoes the notion that judges possess the discretion to impose either concurrent or consecutive sentences in all criminal cases, as will be discussed below in conjunction with State v. Reed, 237 Kan. 685, 687, 703 P.2d 756 (1985).
The majority’s creative distortion of gratuitous dicta from prior cases to support its hybrid theoiy of statutory interpretation is particularly obvious and troubling with respect to its representation of the holding in Burns v. State, 215 Kan. 497, 524 P.2d 737 (1974). Burns pled guilty to several counts—apparently from a single charging document—in return for the county attorney’s withdrawal of a motion for enhanced sentencing under a habitual criminal act. At sentencing on all counts at the same time, the county attorney *300 advised the court of Burns’ prior criminal history, prompting the court to run the sentence on one of the counts consecutive to the other counts. Burns subsequently filed a motion to vacate sentence under K.S.A. 60-1507, and in connection therewith testified that his trial counsel had told him that the plea bargain included the prosecutor’s promise not to present Burns’ prior criminal history to the sentencing court, i.e., the State had breached the plea agreement. His trial counsel testified that he did not recall tire prosecutor promising not to reveal the criminal history. After the district court found in favor of the State, Bums appealed, contending that “he was misled by his court-appointed attorney as well as betrayed by the county attorney.” 215 Kan. at 499.
This court first characterized that “Burns’ complaint on appeal is simply that the court did not believe his testimony that there was a promise not to reveal his past criminal record to the court,” and opined that assessing witness credibility was certainly within the trial court’s discretion. 215 Kan. at 499. The court then dealt with Burns’ ineffective assistance of counsel claim, before addressing the contention that the State had breached the plea agreement. That discussion contains the sentence upon which the majority hangs its hat. The entire discussion was as follows:
“Plea bargaining plays an important role in the effective administration of criminal justice. We approved the application of the ABA Standards for Criminal Administration as they relate to plea bargaining in State v. Byrd, 203 Kan. 45, 453 P.2d 22 [1969]. The standards provide such agreements are not binding upon tire sentencing court. No agreement to withhold Bums’ past criminal record, even if made, could have bound the county attorney or tire sentencing court to those terms. The sentencing judge may and should ask for a pre-sentence report which would include past convictions, regardless of whether the habitual criminal act was to be imposed. [Citation omitted.] The authority of the court in ordering consecutive or concurrent sentences for convictions of two or more offenses at the same or separate times is discretionary with the court. (K.S.A. 1973 Supp. 21-4608, formerly K.S.A. 62-1512.) We find no abuse of discretion in the sentences imposed.” 215 Kan. at 500.
Returning to the majority’s characterization of the Bums opinion, the majority first notes that the 1969 version of K.S.A. 21-4608 “did not address the power to impose consecutive sentences in *301 cases where sentencing occurred on different days.” 302 Kan. at 275. Then, the majority states as follows:
“Despite this silence, in Burns v. State, 215 Kan. 497, 500, 524 P.2d 737 (1974), this court recognized ‘[t]he authority of the court in ordering consecutive or concurrent sentences for convictions of two or more offenses at the same time or separate times is discretionary with the court.’ (Emphasis added.) 215 Kan. at 500 (citing K.S.A. 1973 Supp. 21-4608). This statement seems to continue the longstanding recognition that a judge retains discretion to impose a consecutive sentence in situations where a statute is silent, as long as that authority is consistent with the legislative policy reflected in the sentencing statutes.” 302 Kan. at 275-76.
First, Burns’ sentences for more than two offenses were ordered at the same time. Accordingly, the phrase the majority points to— “or separate times”—has no bearing on the actual holding in Burns, making it gratis dictum. See Black’s Law Dictionary 549 (10th ed. 2014) (defining gratis dictum as a court’s stating a legal principle more broadly than necessary to decide case).
More importantly, however, Bums’ declaration about judicial discretion is directly attributable to K.S.A. 1973 Supp. 21-4608, which stated: “(1) When separate sentences of imprisonment for different crimes are imposed on a defendant on the same date, . . . such sentences shall run concurrently or consecutively as the court directs.” (Emphasis added.) In other words, the sentencing circumstance presented in Bums was completely covered by expressed statutory authority—no silence, no ambiguity, no gap to fill, no room for applying the common law. Accordingly, Bums was actually recognizing fairly recent explicit statutory authority, rather than acknowledging any land of “longstanding” common-law discretion. The majority’s cherry-picked superfluous phrase from Bums simply cannot carry the load which tire majority heaps upon it.
Finally, In re W.H., 274 Kan. 813, 817, 57 P.3d 1 (2002), noted that “[fjrom its early beginnings, Kansas relied upon statutory authority to impose consecutive sentencing.” (Emphasis added.) Curiously, tire opinion added the dictum that “Kansas may recognize that a court had the common-law authority to impose consecutive sentences,” citing to Beck and Finch. 274 Kan. at 817. But, as noted *302 above, those cases held that consecutive sentencing was a product of statutory policy, in derogation of the common law. Then, just as curiously, the opinion declares that “[t]he common law rule was abrogated by statute in 1855,” and quotes a statute virtually identical to those in Beck and Finch. 274 Kan. at 817. What is crystal clear is that In re W.H. decided that the district court had no authority to impose consecutive sentencing in that context because there was no statutory authority to do so, either expressed or implied. Notwithstanding its finding that the Kansas Juvenile Justice Code (KJJC) “is silent on the question of consecutive sentences,” 274 Kan. at 823, In re W.H. did not even discuss the possibility of filling an ambiguity-by-silence statutory gap with common-law authority.
In short, I have been unable to locate a prior Kansas case in which the sentencing court explicitly relied upon common-law authority to impose consecutive sentences in any case, much less in the different case/different day/different county circumstance. Rather, the courts have broadly construed statutory provisions to give effect to what they referred to as “statutory policy.” E.g., Beck, 137 Kan. at 753. And, again, a court broadly construing and applying a statute to give effect to perceived legislative intent is the antithesis of applying the common law, which is derived by judicial decisions, not legislative intent.
I will forego any lengdiy discussion about the majority’s reliance on the United States Supreme Court’s interpretation of federal criminal law, or other states’ handling of their own criminal law, because that discussion has no more bearing on Kansas common law than it does on the price of wheat in Kansas. Moreover, as noted in In re W.H. and acknowledged by the majority, the law of consecutive sentencing in Kansas was the product of statutory law even before statehood in 1861. See 1855 Laws of the Kansas Territory, ch. 54, § 9 (providing for consecutive sentencing when defendant convicted of two or more offenses before being sentenced on either offense). Surely, then, we need not ruminate on English common law in an area of tire state law that has been controlled by statute throughout the state’s entire period of existence.
*303 Next, I have multiple disagreements with the majority’s stare decisis rationale based on Chronister. My initial concern is that the majority appears to have manufactured a new definition of the stare decisis doctrine. In the case it cites, Crist v. Hunan Palace, Inc., 277 Kan. 706, 715, 89 P.3d 573 (2004), this court quoted from Samsel v. Wheeler Transport Services, Inc., 246 Kan. 336, 356, 789 P.2d 541 (1990), overruled on other grounds Bair v. Peck, 248 Kan. 824, 844, 811 P.2d 1176 (1991), as follows, with emphasis added: “ ‘It is recognized under the doctrine of stare decisis that, once a point of law has been established by a court, that point of law will generally be followed by the same court and all courts of lower rank in subsequent cases where the same legal issue is raised.’ ” The majority acknowledges that this court has not decided the issue presented here, and, given that we are the court of last resort with respect to Kansas law, we are not bound by any higher court’s decision.
Granted, the majority attempts to sidestep its aberrant use of the stare decisis doctrine by saying that it understands that we are not bound by a Court of Appeals decision. But re-labeling its argument as “following precedent” should not fool anyone.
Moreover, at least since 2008, district courts should have been on notice that the holding in Chronister was suspect, at best. In State v. Crawford, 39 Kan. App. 2d 897, 897-98, 185 P.3d 315 (2008), a panel of the Court of Appeals, relying on our precedent, In re W.H., clearly declared that “[a] court’s power to impose consecutive sentences flows from statutoiy authority,” and that because none of the consecutive-sentence statutes in the adult criminal code expressly included the circumstance in that case, “the district court had no authority to impose a consecutive adult sentence.” (Emphasis added.)
The Court of Appeals panel in this case distinguished Crawford by the factual distinction that the prior sentence, to which the adult sentence was imposed consecutively, was a juvenile adjudication. State v. Quested, No. 106,805, 2012 WL 3000385, at *1 (Kan. App. 2012) (unpublished opinion), rev. granted 298 Kan. 1207 (2013.) But that was a distinction without a difference. Crawford was construing the adult sentencing statutes to see if the adult sentence *304 could be imposed consecutively. Determining that an adult sentence cannot be imposed consecutive to a prior juvenile adjudication because no statute says it can be is no different than saying an adult sentence cannot be imposed consecutive to another adult sentence imposed in a different county, in a different case, on a different day because no statute says it can be. The point is that Crawford refused to acknowledge or apply any common-law authority for adult consecutive sentencing in derogation of the statutory sentencing scheme.
Perhaps more importantly, the majority appears to read into Chronister a holding that will further its objective of finding a heretofore undiscovered hybrid common-law, statutoiy silence-triggering, gap-filling sentencing authority. I do not see any mention of statutory silence or common law in the Chronister opinion. I do see citation to and discussion of K.S.A. 1994 Supp. 21-4608(h), K.S.A. 1994 Supp. 21-4608(a), and the 1982 amendment to K.S.A. 21-4608, together with the presumption that the legislature is presumed to intend that a statute be given a reasonable construction, so as to avoid unreasonable or absurd results. 21 Kan. App. 2d at 593-94. That is followed by opining that “[i]t would be illogical to provide the sentencing benefit Chronister asserts merely because he committed the third crime against E.C. in Harvey County rather than in Sedgwick County or in another state or federal jurisdiction.” 21 Kan. App. 2d at 593. The opinion certainly reads as if the panel is giving effect to legislative intent, rather than court-made common law.
I do acknowledge, however, that Chronister recites tire broad statement that “[pjrior to 1982, the imposition of concurrent or consecutive sentences in all criminal cases was placed within the sound discretion of the trial court.” 21 Kan. App. 2d at 593 (citing Reed, 237 Kan. at 687). But Chronister s use of the Reed language is untenable for several reasons.
First, and foremost, the language Chronister pulled from Reed was pure dictum; the common-law sentencing discretion of the district court—whether before or after 1982—was simply not an issue in Reed. The opinion stated that the “sole issue presented” in Reed was “whether mandatory consecutive sentences were re *305 quired under K.S.A. 1984 Supp. 21-4608(4), because the defendant committed two felonies after having been released on bond pending trial in the first case.” 237 Kan. at 686. In other words, Reed ultimately found that the consecutive sentences in that case were statutorily mandated, rather than finding that the sentencing judge had a common-law power to impose them at the court’s discretion.
Recently, this court clarified that “[djicta in a court opinion is not binding, even on the court itself.” Law v. Law Company Building Assocs., 295 Kan. 551, Syl. ¶ 1, 289 P.3d 1066 (2012). Surely, then, if this court’s dictum in Reed would not be binding on this court, as a matter of law, then the mere fact that a Court of Appeals decision has cited to the dictum cannot elevate it to the status of being mandatory authority for us. That would be contrary to the rationale recited in Lato, i.e., “because the court should consider the issue in light of the briefs and arguments of counsel when the question is squarely presented for decision.” 295 Kan. 551, Syl. ¶ 1.
Further, the out-of-context cite to only part of a sentence from Reed distorts the point being made in that prior case. The entire sentence reads as follows: “It should be noted that under the pre-1982 statute, the imposition of concurrent or consecutive sentences in all criminal cases was placed within the sound discretion of the trial court, and mandatory consecutive sentences were not required in any case.” (Emphasis added.) Reed, 237 Kan. at 687. And that sentence followed a recitation of the pre-1982 version of K.S.A. 21-4608(2), which provided that any person committing a crime while on parole or conditional release “shall serve such sentence concurrently or consecutively with the term or terms under which the person was released, as the court directs.” (Emphasis added.) 237 Kan. at 687. In other words, the pre-1982 discretion to not impose a consecutive sentence came from-the prior statute, not the common law.
Then, following the cited sentence, Reed explained how the legislature had responded to public concern about felonies being committed by persons who were released on bond from a prior felony case by making consecutive sentencing mandatory in such a cir *306 cumstance. The point the Reed court was making was that, prior to the 1982 statutory amendments making consecutive sentences mandatory, the district court had the discretion under the express language of K.S.A. 21-4608(2) to impose the statutorily authorized concurrent sentence. The point was not that prior to 1982 the sentencing judges were imposing consecutive sentences for crimes committed on bond pursuant to any type of common-law authority.
Moreover, Reed’s overbroad statement that, prior to 1982, the trial court had discretion to impose either a concurrent or consecutive sentence “in all criminal cases,” 237 Kan. at 687, is simply incorrect. (Emphasis added.) We see that notion refuted by the 1933 holding in Beck, where the court found consecutive sentencing to be mandatory, pursuant to statutoiy policy, and specifically declared that the district court in that case had no discretion or authority to impose a concurrent sentence. 137 Kan. at 752-53.
Lastly, Reed was filed on July 26, 1985, and later that same year, on December 6, 1985, the Kansas Supreme Court filed its opinion in State v. Osbey, 238 Kan. 280, 710 P.2d 676 (1985). Osbey declared that “[i]n Kansas, sentencing of an individual is strictly controlled by statute.” 238 Kan. at 288. As in Reed, Osbey did not cite to any authority for its sweeping declaration. But subsequent Kansas Supreme Court opinions over the succeeding decades would repeat that rule. See State v. McCarley, 287 Kan. 167, 174, 195 P.3d 230 (2008) (“[T]he sentencing of a criminal defendant is strictly controlled by statute in Kansas.”); State v. Martin, 285 Kan. 735, 738, 175 P.3d 832 (2008) (“The sentencing of a criminal defendant is strictly controlled by statute in Kansas.”); State v. Anthony, 274 Kan. 998, 999, 58 P.3d 742 (2002) (“The sentencing of a criminal defendant is strictly controlled by statute in Kansas.”); State v. Vanwey, 262 Kan. 524, Syl. ¶ 4, 941 P.2d 365 (1997) (“The sentencing of a criminal defendant is strictly controlled by statute in Kansas.”); and State v. Saft, 244 Kan. 517, Syl. ¶ 1, 769 P.2d 675 (1989) (“The sentencing of a criminal defendant is strictly controlled by statute in Kansas.”).
If a judge is employing a common-law power to impose a portion of a sentence that is not specifically or even impliedly authorized by any sentencing statute, tiren that criminal defendant’s sentenc *307 ing has not been strictly controlled by Kansas statutes. The sentence has been partly controlled by statute and partly controlled by common law.
The majority’s apparent interpretation of “strictly controlled” is that the statute only controls the portion of the sentence which it specifically authorizes or specifically prohibits. But, of course, that renders superfluous the modifier, “strictly.” In all areas of the law, a specific statutory provision that authorizes or prohibits an action will necessarily control the matter in court, even if we have not declared that area of the law as being “strictly controlled” by statute. I find such creative redefining of plainly understood words and phrases to be contrary to the transparency for which this court has strived in recent years. Moreover, one can only imagine the discomfort of those legislators who might realize that Kansas common law is what the Kansas Supreme Court says it is, so that the majority’s new paradigm means that whenever the legislature fails to prohibit something, the Kansas Supreme Court will be able to “fill the gap” with its own view of the “common law.”
I submit that the rule that our statutes strictly control criminal sentencing relieves the legislature of the burden of specifically listing all unauthorized sentences, especially those that might have emanated from the common law. The sentencing statutes should not have to tell a sentencing judge everything that he or she cannot do.
But perhaps more to the point, one cannot view the comprehensive nature of the new Kansas Criminal Code and Kansas Code of Criminal Procedure, adopted in 1969, without believing that the legislature intended to occupy that entire field. See Clark, State Control of Local Government in Kansas: Special Legislation and Home Rule, 20 Kan. L. Rev. 631, 672 (1972) (“The comprehensiveness of the state Criminal Code, coupled with the elaborate procedural safeguards given to defendants by the equally comprehensive Code of Criminal Procedure, suggests that the legislature has preempted the criminal law field, except for matters such as minor traffic violations.”). Additionally, in K.S.A. 21-3102(3), the legislature specifically provided that the new criminal code “does not affect the power of a court to punish for contempt or to employ *308 any sanction authorized by law for the enforcement of an order or a civil judgment or decree.” The converse of that statement is that tire new code did affect the power of the court to punish for crimes under the code.
I do not quibble with the majority’s quote from Professor Wilson which declares that one must make reference to the common law in order to understand legislative intent. In fact, the legislature has specifically said that the common law has a place in the comprehensive criminal code. See K.S.A. 21-3102(1) (where statutory crime is not defined by that statute, common law definition shall be applied); K.S.A. 77-109 (common law as modified by constitution, statute, and judicial decisions shall remain in force in aid of the general statutes of the state). But the discretion retained by the sentencing courts must be authorized by the statutes.
Then, some 23 years after adopting the comprehensive criminal code, the legislature passed the comprehensive Kansas Sentencing Guidelines Act, K.S.A. 21-4701 et seq., which made sweeping changes in the law of sentencing, principally eliminating the exercise of most judicial discretion. One would have to view that action as the legislature not only acquiescing to, but embracing, our caselaw declaring that the sentencing of a criminal defendant is strictly controlled by statute, not by common law.
Finally, I offer the suggestion that the majority’s citation to K.S.A. 21-4601 for the legislative directive that the statutory article on sentencing “shall be liberally construed” to effect its purposes actually undermines the majority’s argument. That statute tells me that the legislature wants the courts to liberally construe its statutory language to make the legislative enactments applicable, rather than strictly construing the statutes to make them inapplicable and then fill in the gaps with court-made common law. Moreover, while a certain amount of synergy between statutory law and common law may be desirable, I would not destroy the distinction between the two.
In short, I would not obfuscate the law in this state simply to correct a perceived legislative oversight, when the legislature can make its own corrections, if that is indeed what it intended. I would reverse Quested’s consecutive sentencing.