274 Kan. 813 (2002)
57 P.3d 1
IN THE MATTER OF W.H., RESPONDENT D.O.B. 02/21/83
A MALE UNDER THE AGE OF 18 YEARS
No. 87,001.
Supreme Court of Kansas.
Opinion filed November 1, 2002.
Kevin W. Babbit, of Kansas Legal Services, argued the cause and was on the briefs for appellant.
R. Clark Allemang, II, assistant county attorney, argued the cause, and Marc Goodman, county attorney, and Carla J. Stovall, attorney general, were with him on the briefs for appellee.
The opinion of the court was delivered by
DAVIS, J.:
This case presents the question whether the Kansas Juvenile Justice Code (KJJC), K.S.A. 38-1601 et seq., authorizes the imposition of consecutive sentences in an appropriate case. We *814 conclude that the legislature enacted a comprehensive sentencing scheme in the KJJC and did not by its silence on this issue imply that consecutive sentences may be imposed. For the reasons set forth in this opinion we, therefore, vacate the sentences imposed by the district court, reverse the Kansas Court of Appeals affirming the imposition of consecutive sentences, and remand the case for sentencing consistent with this opinion.
W.H. was born February 21, 1983. He was charged with five offenses, four of which occurred after July 1, 1999, and one which occurred May 7, 1999: Felony obstruction of legal process, felony theft, criminal deprivation of property, domestic violence battery, and conspiracy to commit forgery. W.H. pled guilty to all charges and was sentenced January 3, 2001, under the provisions of K.S.A. 38-16,129. As noted by the Court of Appeals, K.S.A. 38-16,129 applies to offenses committed after July 1, 1999. Thus, W.H.'s sentence under K.S.A. 38-16,129 for the offense of criminal deprivation of property occurring on May 7, 1999, was an illegal sentence. The Court of Appeals, in In re W.H., 30 Kan. App.2d 326, 41 P.3d 891 (2002), correctly decided that W.H.'s sentence for criminal deprivation of property was illegal, and we affirm this portion of the Court of Appeals' opinion.
All other charges occurred after July 1, 1999, and do not present a similar problem. At the time of W.H.'s sentencing, the district court noted that he had been twice adjudicated as a juvenile offender for offenses which, if committed by an adult, would have constituted felony convictions. Based upon the provisions of K.S.A. 38-16,129(a)(3)(A)(i), W.H. was identified for sentencing purposes as a Chronic Offender I. Offenders in this category may be committed to a juvenile correctional facility for a minimum term of 6 months and a maximum term of 18 months.
In addition, the district attorney had filed a motion under K.S.A. 38-1636 requesting that the court designate the proceedings as an extended jurisdiction juvenile prosecution. Upon hearing, the court designated the proceedings as an extended jurisdiction juvenile prosecution calling for sentencing in accord with the provisions of K.S.A. 38-16,126:

*815 "(a) If an extended jurisdiction juvenile prosecution results in a guilty plea or finding of guilt, the court shall:
(1) Impose one or more juvenile sentences under K.S.A. 38-1663, and amendments thereto; and
(2) impose an adult criminal sentence, the execution of which shall be stayed on the condition that the juvenile offender not violate the provisions of the juvenile sentence and not commit a new offense."
W.H. was sentenced both as a juvenile and as an adult under the extended jurisdiction juvenile prosecution. For his juvenile sentences as a Chronic Offender I, the district court, considering the minimum term of 6 months and a maximum term of 18 months under K.S.A. 38-16,129(a)(3)(A)(i), sentenced W.H. to 10 months for felony obstruction, 10 months for felony theft, 6 months for criminal deprivation of property, 6 months for domestic violence battery, and 8 months for conspiracy to commit forgery. The district court ordered the terms to be served consecutively. The adult sentences imposed by the district court were identical to the juvenile sentences imposed. W.H. filed a timely appeal. The Court of Appeals affirmed the consecutive juvenile sentences, and we granted W.H.'s petition for review.
The Court of Appeals' Decision
In dealing with the question of consecutive terms of commitment, the Court of Appeals noted the KJJC neither provides for nor prohibits consecutive sentences. The court acknowledged W.H.'s argumentsummarized by the legal maxim, expressio unius est exclusio alteriusthat the inclusion of one implies the exclusion of another. Based upon this maxim, W.H. points out that the Kansas Sentencing Guidelines Act (KSGA), K.S.A. 21-4701 et seq., grants judges the power to impose consecutive sentences, but the KJJC is silent on this issue. According to his argument, if the legislature intended to permit judges to order consecutive terms of commitments for juveniles, the legislature would have enacted provisions similar to those in the KSGA.
The court then turned to case law in New Jersey, citing State in Interest of J.L.A., 136 N.J. 370, 643 A.2d 538 (1994), and State v. Horton, 45 N.J. Super. 44, 131 A.2d 425 (1957). The court derived *816 two concepts from the New Jersey cases: (1) The imposition of consecutive sentences is an inherent power of the judiciary, and (2) the imposition of consecutive sentences will be upheld as long as doing so is consistent with the objectives of the juvenile code.
The court examined the goals of the KJJC and determined that consecutive sentences did not conflict with the primary goals of the KJJC: (1) promotion of public safety, (2) holding juvenile offenders accountable for their behavior, and (3) improving the ability of the juveniles to live more productively and responsibly in the community. K.S.A. 38-1601. Rejecting W.H.'s expressio unius est exclusio alterius argument, the court noted that "if the legislature wanted to prohibit consecutive sentences for juveniles, it could have done so."
The Court of Appeals also cited Juvenile Justice Authority Policy Number 4-701. Paragraph 18 of the policy was relevant to the issue:
"18. Multiple cases. When sentences in multiple cases are ordered by the court, the JCF [Juvenile Correctional Facility] shall calculate release dates based on whether the court orders sentences to run consecutively or concurrently. The facility shall determine the beginning date for each case. From that date, the JCF shall calculate the EPRD [earliest possible release date] for each sentence."
Based upon the following analysis, we conclude that the Court of Appeals' reliance upon J.L.A., 136 N.J. 370, was misplaced. The New Jersey Supreme Court held that their juvenile code authorized consecutive sentences even though it was silent on the subject, primarily based upon its unique state history. 136 N.J. at 374-75, 382-83.
J.L.A. was charged with acts of delinquency which, if committed by an adult, would have constituted attempted armed robbery and second-degree aggravated assault, first-degree armed robbery, and second-degree possession of a weapon. Upon hearing, the court adjudicated J.L.A. a delinquent, merged the adjudications of attempted armed robbery and possession of a weapon for an unlawful purpose with the armed robbery adjudication, and ordered that J.L.A. serve an indeterminate term of incarceration not to exceed 4 years for the armed robbery and a consecutive indeterminate term not to exceed 3 years for aggravated assault.
*817 In its analysis, the New Jersey Supreme Court began with the common law and found that the inherent authority to order consecutive sentences was based upon the common law. 136 N.J. at 374. The court then considered two cases permitting consecutive sentences in cases of "young adult offenders." 136 N.J. at 374-75. In reversing the appellate division, the court relied upon the common law inherent power of the judiciary to impose, absent a statutory prohibition, consecutive sentences for separate offenses, a power consistently recognized by New Jersey courts:
"`In the absence of a statute expressly prohibiting the sentencing judge from exercising such discretion, we find that the power to impose consecutive life sentences resides in the trial judge.' Id. at 69, 198 A.2d 768; see also State v. Mahaney, 73 N.J.L. 53, 56, 62 A. 265 (Sup. Ct. 1905) (`[T]he great weight of authority in this country is that, without any statutory provision for consecutive sentences, the power to impose them resides in the court.'), aff'd, 74 N.J.L. 849, 67 A. 1103 (E. & A. 1907)." 136 N.J. at 374 (quoting State v. Maxey, 42 N.J. 62, 198 A.2d 768 [1964]).
The history in Kansas differs from that of New Jersey. From its early beginnings, Kansas relied upon statutory authority to impose consecutive sentencing even though Kansas may recognize that a court had the common-law authority to impose consecutive sentences. Beck v. Fetters, 137 Kan. 750, 751-52, 22 P.2d 479 (1933); see State v. Finch, 75 Kan. 582, 89 Pac. 922 (1907). The common-law rule was abrogated by statute in 1855:
"When any person shall be convicted of two or more offences before sentence shall have been pronounced upon him for either offence, the imprisonment to which he shall be sentenced upon the second or other subsequent conviction shall commence at the termination of the term of imprisonment to which he shall be adjudged upon prior convictions." (Emphasis added.) 1855 Laws of the Kansas Territory, ch. 54, § 9.
This law, though codified at various places, remained unchanged until 1963:
"Section 62-1512 of the General Statutes of 1949 is hereby amended to read as follows: Sec. 62-1512. Whenever a person is convicted of two or more offenses charged in one or more informations, indictments, or complaints, whether such convictions take place at the same or at separate times, it shall be the duty of the sentencing judge to prescribe whether the sentences shall be served concurrently or consecutively. Whenever sentences are pronounced in two (2) or more separate *818 cases upon the same day and it is the order of the judge that the sentences shall be served consecutively, the journal entries shall reflect the sequence in which the sentences were pronounced: Provided, That whenever the record is silent as to the manner in which two (2) or more sentences are to be served, they shall be served concurrently, each commencing on the date it was imposed." L. 1963, ch. 306, § 1.
More importantly, New Jersey has a young adult offenders code which does not expressly authorize consecutive sentences; yet consecutive sentences have been imposed under the New Jersey young adult offenders code with legislative acquiescence over a period of years. Kansas has no such young adult offender code and no history of court decisions with legislative acquiescence supporting an implied power to impose consecutive sentences where the statute is silent.
Given the disparity between New Jersey and Kansas, we conclude that J.L.A. provides little support for implied consecutive sentencing power under the KJJC. The remaining similarity is contained in the goals of juvenile justice. We note, however, that the goals for juvenile justice in Kansas are very broad and would provide a basis for concluding that the imposition of consecutive as well as concurrent sentences is consistent with the expressed goals. Promotion of public safety and accountability as well as improving the ability of juveniles to live more productively and responsibly in the community, taken together would support both consecutive and concurrent sentencing. Basing a conclusion that such goals alone provide for an implied statutory power to impose consecutive sentences would be a weak conclusion at best. We must consider not only the goals but the entire KJJC for an answer.
The Question and Our Standard of Review
The question of whether the KJJC empowers a district court to impose consecutive terms of commitment is one of first impression in this state. It is a question of law involving the interpretation of provisions of the KJJC, and our standard of review is unlimited. State v. Becker, 264 Kan. 804, 808, 958 P.2d 627 (1998). In applying our standard to this case, we follow familiar rules of statutory interpretation:

*819 "The fundamental rule of statutory construction is that the intent of the legislature governs when that intent can be ascertained from the statute. [Citation omitted.] The general rule is that criminal statutes must be strictly construed in favor of the accused. Any reasonable doubt about the meaning is decided in favor of anyone subjected to the criminal statute. The rule of strict construction, however, is subordinate to the rule that judicial interpretation must be reasonable and sensible to effect legislative design and intent. [Citations omitted.] In construing statutes and determining legislative intent, several provisions of an act, in pari materia, must be construed together with a view of reconciling and bringing them into workable harmony if possible. [Citation omitted.]" State v. Vega-Fuentes, 264 Kan. 10, 14, 955 P.2d 1235 (1998).
Kansas Juvenile Justice Code
The answer to the question posed lies in the KJJC itself if the statutory language is sufficiently clear. The KJJC has changed substantially over the past 5 years. See Stovall, Justice and Juveniles in Kansas: Where We Have Been and Where We Are Headed, 47 Kan. L. Rev 1021 (1999); Note, The Worst of Both Worlds: How the Kansas Sentencing Guidelines Have Abandoned Juveniles in the Name of "Justice," 35 Washburn L. J. 308 (1996).
Kansas Sentencing Scheme
The most important change and the one that bears directly upon the question raised by this appeal involves sentencing. The KJJC sets forth a comprehensive system addressing many, if not most, of the problems encountered by a sentencing judge. For those situations where it would be unproductive to continue with the juvenile system outlined in the KJJC, K.S.A. 38-1636 authorizes, after hearing, a move to the adult criminal procedure. Moreover, in those situations where there is a great risk that the alternatives available under the KJJC may not work, K.S.A. 38-1636 authorizes the county or district attorney to file a motion requesting that the court designate the proceeding as an extended jurisdiction juvenile prosecution as described in K.S.A. 38-16,126, thus providing the sentencing judge with additional available sentencing alternatives.
The KJJC incorporates a detailed placement matrix based on the unique history of a juvenile's past offenses and his or her present offense, providing guidance and alternatives to the sentencing judge for confinement as set forth in K.S.A. 38-16,129. Offenders *820 are classified according to the seriousness of their particular crimes, with the most serious being the violent offenders. K.S.A. 38-16,129(a)(1)(A) provides:
"(1) Violent Offenders. (a) The violent offender I is defined as an offender adjudicated as a juvenile offender for an offense which, if committed by an adult, would constitute an off-grid felony. Offenders in this category may be committed to a juvenile correctional facility for a minimum term of 60 months and up to a maximum term of the offender reaching the age of 22 years, six months. The aftercare term for this offender is set at a minimum term of six months and up to a maximum term of the offender reaching the age of 23 years."
K.S.A. 38-16,129(a)(1)(B) provides:
"(B) The violent offender II is defined as an offender adjudicated as a juvenile offender for an offense which, if committed by an adult, would constitute a nondrug level 1, 2, or 3 felony. Offenders in this category may be committed to a juvenile correctional facility for a minimum term of 24 months and up to a maximum term of the offender reaching the age 22 years, six months. The aftercare term for this offender is set at a minimum term of six months and up to a maximum term of the offender reaching age of 23 years."
We note that in the above two categories, given the minimum and maximum sentences possible and understanding that juvenile jurisdiction terminates at age 23, absent extended juvenile jurisdiction, consecutive sentences under either classification would be superfluous.
The remaining provisions of K.S.A. 38-16,129 regarding sentencing provide:
"[(a)] (2) Serious Offenders. (A) The serious offender I is defined as an offender adjudicated as a juvenile offender for an offense which, if committed by an adult, would constitute a nondrug severity level 4, 5 or 6 person felony or a severity level 1 or 2 drug felony. Offenders in this category may be committed to a juvenile correctional facility for a minimum term of 18 months and up to a maximum term of 36 months. The aftercare term for this offender is set at a minimum term of six months and up to a maximum term of 24 months.
(B) The serious offender II is defined as an offender adjudicated as a juvenile offender for an offense which, if committed by an adult, would constitute a nondrug severity level 7, 8, 9 or 10 person felony with one prior felony adjudication. Offenders in this category may be committed to a juvenile correctional facility for a minimum term of nine months and up to a maximum term of 18 months. The aftercare term for this offender is set at a minimum term of six months and up to a maximum term of 24 months.

*821 "(3) Chronic Offenders. (A) The chronic offender I, chronic felon is defined as an offender adjudicated as a juvenile offender for an offense which, if committed by an adult, would constitute:
(i) One present nonperson felony adjudication and two prior felony adjudications; or
(ii) one present severity level 3 drug felony adjudication and two prior felony adjudications.
"Offenders in this category may be committed to a juvenile correctional facility for a minimum term of six months and up to a maximum term of 18 months. The aftercare term for this offender is set at a minimum term of six months and up to a maximum term of 12 months.
(B) The chronic offender II, escalating felon is defined as an offender adjudicated as a juvenile offender for an offense which, if committed by an adult, would constitute:
(i) One present felony adjudication and two prior misdemeanor adjudications;
(ii) one present felony adjudication and two prior severity level 4 drug adjudications;
(iii) one present severity level 3 drug felony adjudication and two prior misdemeanor adjudications; or
(iv) one present severity level 3 drug felony adjudication and two prior severity level 4 drug adjudications.
"Offenders in this category may be committed to a juvenile correctional facility for a minimum term of six months and up to a maximum term of 18 months. The aftercare term for this offender is set at a minimum term of six months and up to a maximum term of 12 months.
(C) The chronic offender III, escalating misdemeanant is defined as an offender adjudicated as a juvenile offender for an offense which, if committed by an adult, would constitute:
(i) One present misdemeanor adjudication and two prior misdemeanor adjudications and two out-of-home placement failures;
(ii) one present misdemeanor adjudication and two prior severity level 4 drug felony adjudications and two out-of-home placement failures;
(iii) one present severity level 4 drug felony adjudication and two prior misdemeanor adjudications and two out-of-home placement failures; or
(iv) one present severity level 4 drug felony adjudication and two out-of-home placement failures.
"Offenders in this category may be committed to a juvenile correctional facility for a minimum term of three months and up to a maximum term of six months. The aftercare term for this offender is set at a minimum term of three months and up to a maximum term of six months.
"(4) Conditional Release Violators. Conditional release violators may be committed to a juvenile correctional facility, youth residential facility, juvenile detention facility, institution, a sanctions house or to other appropriate community placement for a minimum term of three months and up to a maximum term of *822 six months. The aftercare term for this offender is set at a minimum term of two months and up to a maximum term of six months, or the maximum term of the original aftercare term, whichever is longer.
"(b) As used in this section: (1) `Placement failure' means a juvenile offender has been placed out-of-home on probation in a community placement accredited by the commissioner in a juvenile offender case and the offender has violated significantly the terms of probation in that case.
(2) `Adjudication' included out-of-state juvenile adjudications. An out-of-state offense which if committed by an adult would constitute the commission of a felony or misdemeanor shall be classified as either a felony or a misdemeanor according to the adjudicating jurisdiction. If an offense which if committed by an adult would constitute the commission of a felony is a felony in another state, it will be deemed a felony in Kansas. The state of Kansas shall classify the offense, which if committed by an adult would constitute the commission of a felony or misdemeanor, as person or nonperson. In designating such offense as person or nonperson, reference to comparable offenses shall be made. If the state of Kansas does not have a comparable offense, the out-of-state adjudication shall be classified as a nonperson offense.
"(c) All appropriate community placement options shall have been exhausted before a chronic offender III, escalating misdemeanant shall be placed in a juvenile correctional facility. A court finding shall be made acknowledging that appropriate community placement options have been pursued and no such option is appropriate.
"(d) The commissioner shall work with the community to provide on-going support and incentives for the development of additional community placements to ensure that the chronic offender III, escalating misdemeanant sentencing category is not frequently utilized."
Nowhere in this elaborate scheme did the legislature provide for consecutive sentencing. We believe this to be a significant point in addressing the Court of Appeals' conclusion that if the legislature wanted to prohibit consecutive sentences for juveniles, it could have done so. Our legislature has established in painstaking detail, a comprehensive sentencing scheme, essentially complete as written. In the face of such detail, silence fails to imply the existence of an alternative not expressed.
Adult and Juvenile Systems Similar but Different on Sentencing
Adoption of the juvenile sentencing scheme follows upon the heels of the Kansas Sentencing Guidelines Act (KSGA), K.S.A. 21-4701 et seq. Some of the same philosophy which motivated adoption of the KSGA as to classification and definite terms is incorporated *823 into the KJJC. W.H. makes a convincing argument based upon such similarities. W.H. argues that provisions of K.S.A. 38-16,129 are similar to the provisions of the KSGA. Both provide for presumptive sentences based on the offender's criminal history and both provide that a presumptive sentence must be imposed unless a departure under circumstances set forth is approved. K.S.A. 38-16, 132; K.S.A. 21-4716. Appeals may not be taken if the sentences fall within the presumptive range. K.S.A 38-1681(c)(2)(A); K.S.A. 21-4721(c)(1). In spite of these similarities, W.H. notes that there is a marked difference between the KSGA and the KJJC on the subject of consecutive sentences.
The KSGA expressly empowers a district court to impose consecutive sentences in K.S.A. 21-4720(b) and K.S.A. 21-4608: "The sentencing judge shall otherwise have discretion to impose concurrent or consecutive sentences in multiple conviction cases. Whenever the record is silent as to the manner in which two or more sentences imposed at the same time shall be served, they shall be served concurrently...." K.S.A. 21-4720(b). "When separate sentences of imprisonment for different crimes are imposed on a defendant on the same date, including sentences for crimes for which suspended sentences, probation or assignment to a community correctional services program have been revoked, such sentences shall run concurrently or consecutively as the court directs." K.S.A. 21-4608(a).
The KJJC provides no such power and is silent on the question of consecutive sentences. We agree with W.H. that expressio unius est exclusio alterius applies. Consecutive sentences are expressly permitted and provided for in the KSGA of the adult criminal code but that same power is not provided for in the KJJC. Compare State v. Adam M., 129 N.M. 146, 2 P.3d 883 (Ct. App. 2000); S.G.W. v. People, 752 P.2d 86, 90 (Colo. 1988); In re Christopher V., 207 Conn. 270, 276, 540 A.2d 700 (1988); but see In re Caldwell, 76 Ohio St.3d 156, 666 N.E.2d 1367 (1996). We conclude that the Kansas Legislature by its exclusion regarding consecutive sentences did not authorize the imposition of consecutive sentences under the KJJC.
*824 The judgment of the Court of Appeals is affirmed in part and reversed in part. The judgment of the district court is reversed, the sentences are vacated, and the case is remanded for resentencing.
LARSON, S.J., assigned.[1]
NOTES
[1] REPORTER'S NOTE: Judge Edward Larson became a Senior Judge upon his retirement from the Supreme Court effective September 4, 2002. Pursuant to the authority vested in the Supreme Court by K.S.A. 20-2616, he was assigned to hear this case to fill the vacancy created by his retirement.