Nuss, C.J.,
dissenting: I respectfully dissent.
Thirty years ago this court expressly declared that “[i]n Kansas, sentencing of an individual is strictly controlled by statute.” State v. Osbey, 238 Kan. 280, 288, 710 P. 2d 676 (1985). This court has *286 never disavowed this declaration. Indeed, we have often repeated it as a ruling principle.
“Control” has been defined as “[t]o exercise authority or dominating influence over; direct; regulate.” The American Heritage Dictionary of the English Language 290 (1971). “Strictly” has been defined as “closely, precisely, rigorously; stringently.” Black’s Law Dictionary 1591 (rev. 4th ed. 1968). In a similar vein, “strict” has been defined as “2. Complete; absolute; strict loyalty. 3. Kept within narroio and specific limits: a strict application of a law. ... 5. Enforced or maintained rigorously; stringent: strict standards.” The American Heritage Dictionary of the English Language 1275 (1971).
So our court’s chosen language of “strictly controlled” means that statutes rigorously and exclusively regulate all sentencing in Kansas. Accordingly, if the authority to impose consecutive sentences—as are involved in the instant case—is not contained within Kansas statutes, there simply is no authority to do so. And because the majority opinion admits there is no such statutory authority, our 30-year-old declaration from Osbey applies. And our analysis ends.
But the majority asserts that a Court of Appeals panel opinion which directly conflicts with this principle—State v. Chronister, 21 Kan. App. 2d 589, 903 P.2d 1345 (1995)—is not only controlling but also safeguarded by stare decisis. Like Justice Johnson in his dissent, I too am unclear how an opinion from our intermediate appellate court that was released 10 years after our unanimous opinion in Osbey can both trump our stated principle and carry the protection of stare decisis—while Osbey does not.
The majority appears to reach this conclusion by asserting that “strictly controlled by statute” only applies where the statute has actually spoken and is clearly applicable to the situation. For example, if the statute provides that a sentence must be imposed within certain limits and the resulting sentence is outside of those statutory limits, the sentence is improper. Under this reading, however, there is little reason for the Osbey court to have added the modifier “strictly” to the word “controlled”—since to control already means to regulate.
*287 As an alternative to assailing the meaning of Osbey s plain language, the majority also appears to contend that the Osbey court— and all those Kansas courts listed in Justice Johnson’s dissent that have recited this language since 1985—obviously overstated what should have been communicated. In other words, those courts were wrong to convey the message that the legislature intends to fully occupy the sentencing field. I disagree: Osbey s precise language correctly states Kansas law.
The clearest support from this court for my disagreement is In re W.H., 274 Kan. 813, 57 P.3d 1 (2002). There, the respondent argued that the district court had no authority to impose consecutive juvenile sentences upon him and that the Court of Appeals was wrong to find such authority. We agreed with the respondent, vacating the sentences and remanding for resentencing.
At the core of this court’s opinion in In re W.H. is a firm rejection of the rationale of the Court of Appeals. The panel had reasoned that while the Kansas Juvenile Justice Code (KJJC) provided no authority for imposition of consecutive sentences, the common law could just “fill it in.” In re W.H., 30 Kan. App. 2d 326, 41 P.3d 891 (2002). Of equal importance to our court’s rejection of that rationale is the analytical path it took to get there.
At the very beginning of our court’s analysis, it noted the panel had relied upon New Jersey caselaw to conclude, among other things, that the imposition of consecutive sentences is an inherent power of the judiciaiy based upon the common law. “ ‘ “The great weight of authority in this country is that, without any statutory provision for consecutive sentences, the power to impose them resides in the court.” ’ ” In re W.H., 274 Kan. at 817 (quoting State In Interest of J.L.A., 136 N.J. 370, 374, 643 A.2d 538 [1994] [quoting State v. Mahoney, 73 N.J.L. 53, 56, 62 A. 265 (Sup. Ct. 1905)]). And the New Jersey Supreme Court therefore concluded that in the absence of an express statutory prohibition, a trial judge had tire power to impose consecutive sentences. 274 Kan. at 816-17 (discussing State In Interest of J.L.A., 136 N.J. 370).
The In re W.H. court correctly observed, however, that Kansas’ legal history—from as far back as our territorial days in 1855—was quite different from New Jersey’s:
*288 “From its early beginnings, Kansas relied upon statutory authority to impose consecutive sentencing even though Kansas may recognize that a court had the common-law authority to impose consecutive sentences. Beck v. Fetters, 137 Kan. 750, 751-52, 22 P.2d 479 (1933); see State v. Finch, 75 Kan. 582, 89 P. 922 (1907). The common-law rule was abrogated by statute in 1855:
“When any person shall be convicted of two or more offences before sentence shall have been pronounced upon him for either offence, the imprisonment to which he shall be sentenced upon the second or other subsequent conviction shall commence at the termination of the term of imprisonment to which he shall be adjudged upon prior convictions.’ (Emphasis added.) 1855 Laws of the Kansas Territory, ch. 54, § 9.” 274 Kan. at 817.
The In re W.H. court further observed that this Kansas statutory law authorizing consecutive sentences had essentially been the same for 108 years:
“This law, though codified at various places, remained unchanged until 1963:
‘Section 62-1512 of the General Statutes of 1949 is hereby amended to read as follows: Sec. 62-1512. Whenever a person is convicted of two or more offenses charged in one or more informations, indictments, or complaints, whether such convictions take place at the same or at separate times, it shall be the duty of the sentencing judge to prescribe whether the sentences shall be served concurrently or consecutively. Whenever sentences are pronounced in two (2) or more separate cases upon the same day and it is tire order of the judge that the sentences shall be seived consecutively, the journal entries shall reflect the sequence in which the sentences were pronounced: Provided, That whenever the record is silent as to the manner in which two (2) or more sentences are to be served, they shall be served concurrently, each commencing on the date it was imposed.’ L. 1963, ch. 306, § 1.” In re W.H., 274 Kan. at 817-18.
The court also observed New Jersey’s legislative acquiescence over a period of years to consecutive sentences imposed without express authority in its state young adult offenders code. By contrast, Kansas had no such code and no history of legislative acquiescence to court decisions on this issue.
The In re W.H. court therefore decided that “[g]iven the disparity between New Jersey and Kansas, we conclude that J.L.A. provides little support for implied consecutive sentencing power under the KJJC.” 274 Kan. at 818.
*289 In addition to the court’s express rejection of any notion of a lack of statutory consecutive sentencing authority being “filled in” from the common-law, it implicitly rejected any notion of such lack of authority being filled in by otírer sources, e.g., the Kansas Sentencing Guidelines Act (KSGA).
This court looked at the similarities between the KJJC for sentencing juveniles and, as in the instant case, the KSGA for sentencing adults.
“Adoption of the juvenile sentencing scheme follows upon the heels of the Kansas Sentencing Guidelines Act (KSGA), K.S.A. 21-4701 et seq. Some of the same philosophy which motivated adoption of the KSGA as to classification and definite terms is incorporated into the KJJC. W.H. makes a convincing argument based upon such similarities. W.H. argues that provisions of K.S.A. 38-16,129 are similar to the provisions of the KSGA. Both provide for presumptive sentences based on the offender s criminal history and both provide that a presumptive sentence must be imposed unless a departure under circumstances set forth is approved. K.S.A. 38-16,132; K.S.A. 21-4716. Appeals may not be taken if the sentences fall within the presumptive range. K.S.A. 38-1681(c)(2)(A); K.S.A. 21-4721(c)(1). In spite of these similarities, W.H. notes that there is a marked difference between the KSGA and the KJJC on the subject of consecutive sentences.” In re W.H., 274 Kan. at 822-23.
The court then examined the contrast between the sentencing schemes of the KJJC and KSGA:
“The KSGA expressly empowers a district court to impose consecutive sentences in K.S.A. 21-4720(b) and K.S.A. 21-4608: ‘The sentencing judge shall otherwise have discretion to impose concurrent or consecutive sentences in multiple conviction cases. Whenever the record is silent as to the manner in which two or more sentences imposed at the same time shall be served, they shall be served concurrently . . . .’ K.S.A. 21-4720(b). “When separate sentences of imprisonment for different crimes are imposed on a defendant on the same date, including sentences for crimes for which suspended sentences, probation or assignment to a community correctional services program have been revoked, such sentences shall run concurrently or consecutively as the court directs.’ K.S.A. 21-4608(a).
“The KJJC provides no such power and is silent on the question of consecutive sentences. We agree with W.H. that expressio unius est exclusio alterius applies. Consecutive sentences are expressly permitted and provided for in the KSGA of the adult criminal code but that same power is not provided for in the KJJC. Compare State v. Adam M., 129 N.M. 146, 2 P.3d 883 (Ct. App. 2000); S.G.W. v. People, 752 P.2d 86, 90 (Colo. 1988); In re Christopher V., 207 Conn. 270, 276, 540 A.2d 700 (1988); but see, In re Caldwell, 76 Ohio St. 3d 156, 666 N.E.2d *290 1367 (1996). We conclude that the Kansas Legislature by its exclusion regarding consecutive sentences did not authorize the imposition of consecutive sentences under tire KJJC.” In re W.H., 274 Kan. at 823.
Inherent in this court’s acceptance of the respondent W.H.’s expressio unlus est exclusio alterius argument is a rejection of any argument that die express KSGA statutory authority for consecutive sentencing somehow could be exported to fill in where the KJJC was silent—regardless of the two schemes’ obvious similarities. This reinforces the controlling point the court made earlier when it rejected use of the common law as a filler, i.e., “sentencing of an individual is strictly controlled by statute.” Osbey, 238 Kan. at 288.
Points similar to those established in In re W.H. were made 6 years later by the Court of Appeals in State v. Crawford, 39 Kan. App. 2d 897, 185 P.3d 315 (2008). There, Crawford was certified as an adult and pled no contest to several felonies. Because he was already on probation for juvenile adjudications, the court ordered his adult sentences to run consecutive to his juvenile sanction. The In re W.H. court had addressed whether juvenile sentences could be imposed to ran consecutive to each other. And Crawford now addressed the related question of whether an adult sentence could run consecutive to the previously imposed juvenile sentence.
The Crawford panel answered this question “no.” The panel began its analysis by acknowledging “[w]e must examine statutory concepts for this issue because common-law principles do not apply. Our Supreme Court has recognized the power to impose consecutive sentencing is found only within statutory authority and not through common-law authority.” 39 Kan. App. 2d at 899. It then quoted from In re W.H.:
“ ‘From its early beginnings, Kansas relied upon statutory authority to impose consecutive sentencing even though Kansas may recognize that a court had the common-law authority to impose consecutive sentences. [Citation omitted.] The common-law rule was abrogated by statute in 1855.’ ” Crawford, 39 Kan. App. 2d at 899 (quoting 274 Kan. at 817).
The Crawford panel proceeded to examine all the statutes that authorize consecutive sentences—which it noted covered three types of cases. K.S.A. 21-4608 (when the court is imposing multiple *291 sentences); K.S.A. 21-4720(b) (as an exercise of judicial discretion); and K.S.A. 21-4603e(f) (when sentencing for certain specified crimes committed on or after July 1, 1993). The panel found that none of these statutes authorizing the imposition of consecutive sentences expressly included probations or incarcerations arising from juvenile adjudications. It also determined from caselaw that juvenile adjudications are not the functional equivalents of adult convictions. So the panel concluded that none of these statutes within die KSGA provided consecutive sentencing authority for juveniles. 39 Kan. App. 2d at 901.
As for the next possibility—that the KJJC itself provided authority for the imposition of consecutive juvenile sentences—the Crawford panel again looked to In re W.H. for guidance. The Crawford panel concluded:
“Such guidance is clear. The rule of expressio unius est exclusio alterius governs in situations where a trial court utilizes juvenile adjudications for sentencing purposes.
“Based on tire legislature's exclusion of specific language listing juvenile adjudications [from the KJJC], we conclude that body meant to exclude juvenile adjudications from cases calling for consecutive adult sentences. The court here had no authority to impose a consecutive sentence. Thus, this was an illegal sentence.” Crawford, 39 Kan. App. 2d at 903.
Accordingly, although Crawford was certified as an adult, the panel vacated his sentence and remanded for one that was not consecutive to his juvenile sanction. 39 Kan. App. 2d at 904.
To summarize, In re W.H. establishes that juvenile sentences could not be ordered to run consecutively because there was no statutory authority in the KJJC to do so. And Crawford logically extends In re W.H. to conclude that an adult sentence could not be ordered to run consecutive to a juvenile sentence because there was no statutory authority—in either the KJJC or the KSGA—to do so. Neither In re W.H. nor Crawford has been overruled by any appellate court.
Moreover, to borrow the majority’s use of legislative acquiescence to court decisions as support for its position, I note that neither In re W.H.’s nor Crawford’s result has been changed by the legislature. Given this, I question whether legislative inaction *292 truly buttresses the majority’s outcome. See U.S.D. No. 501 v. Baker, 269 Kan. 239, 246-47, 6 P.3d 848 (2000) (“Legislative inaction is not necessarily indicative of legislative intent.”).
While neither In re W.H. nor Crawford directly quotes Osbey, effectively they rely upon its articulated principle. Moreover, this court has cited Osbey or its principle as authority in multiple cases—many of which are placed in question by today’s majority opinion. For example, this court quoted Osbey’s language in State v. Anthony 274 Kan. 998, 999, 58 P.3d 742 (2002). There, we unanimously rejected a district court’s purported authority to modify a felony DUI sentence after imposition because the KSGA was silent on that issue. 274 Kan. at 1001-02; see also State v. Miller, 260 Kan. 892, 900, 926 P.2d 652 (1996) (same for other felony sentences). In other words, we interpreted KSGA silence about the power to order sentence modification to mean district courts lack that authority. And we reached this conclusion even though district courts had modification authority at common law. See State v. Hughes, 35 Kan. 626, 633, 12 P. 28 (1886).
By not honoring Osbey’s declared principle, the majority opinion now casts doubt on our approach to the KSGA applied in Anthony and other similar cases in the past. It also invites argument in future cases that district courts possess all sentencing authority—from the common law or otherwise—that is not expressly addressed by the legislature in the KSGA.
So I stand by Osbey’s declaration. That is, the legislature has reserved to itself the power for authorizing consecutive sentences—and not just in the KJJC. This principle applies to adult Quested and the KSGA. And because the legislatively-created KSGA does not authorize imposing consecutive sentences for his situation, he cannot be so sentenced. Any fix lies with the legislature.
[[Image here]]