NOT DESIGNATED FOR PUBLICATION

No. 122,189

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of Z.T.


MEMORANDUM OPINION


Appeal from Riley District Court; GRANT D. BANNISTER, judge. Opinion filed June 19, 2020. Affirmed in part, vacated in part, and remanded with directions.


*Andy Vinduska*, of Manhattan, for appellant.


*John A. Griffin*, assistant county attorney, and *Derek Schmidt*, attorney general, for appellee.


Before BRUNS, P.J., GREEN, J., and TIMOTHY J. CHAMBERS, District Judge, assigned.


PER CURIAM: After Z.T.—who was 14 years old at the time—pled no contest to possession of a firearm by an adjudicated felon and criminal use of a weapon in Riley County, the district court sentenced him to serve 12 months at a juvenile correctional facility to be followed by a 6-month term of conditional release. The sentence in this case was to be served consecutive to juvenile sentences that he had previously received in Geary County.


On appeal, Z.T. contends that his sentence is illegal because the Revised Kansas Juvenile Justice Code (RKJJC), K.S.A. 2019 Supp. 38-2301 et seq., does not authorize consecutive sentences in juvenile cases that arise in different counties. Z.T. also contends that the district court did not have the authority under the RKJJC to impose a term of conditional release. For the reasons stated in this opinion, we conclude that the RKJJC does not expressly authorize consecutive sentences to be imposed under the

1

circumstances presented in this case. However, we conclude that the district court did have authority to impose a term of conditional release. Thus, we affirm in part, vacate in part, and remand with directions.

FACTS

On April 28, 2019, Z.T. left his temporary custody placement in Geary County. The person with whom he had been temporarily placed reported Z.T. as a runaway and noted that he had taken two guns with him when he left. At the time, he was 14 years old. Later that day, police arrested him in Riley County. When he was arrested, Z.T. was carrying a semi-automatic rifle and a holstered revolver.

The State charged Z.T. in juvenile court with unlawful possession of a firearm and criminal use of a weapon. He pled no contest to both counts and the district court accepted his plea. Subsequently, court services completed a Presentence Investigation report (PSI) and Youth Level of Service report (YLS). The PSI revealed that Z.T. had been previously adjudicated in Geary County of multiple offenses that would have constituted felony convictions if committed by an adult. Moreover, his YLS placed him at an overall high-risk level.

Based on Z.T.'s criminal history and risk level, court services identified Z.T. as a Chronic Offender I. See K.S.A. 2019 Supp. 38-2369(a)(3)(A). Offenders in this category may be committed to a juvenile correctional facility for a minimum term of 6 months and a maximum term of 12 months. See K.S.A. 2019 Supp. 38-2369(a)(3)(A)(iii). The district court granted the State's request to designate the proceedings as an extended jurisdiction juvenile prosecution. In an extended jurisdiction juvenile proceeding, the district court imposes both a juvenile and an adult sentence; the adult sentence is stayed provided that the juvenile complies with the conditions of the juvenile sentence. See K.S.A. 2019 Supp. 38-2364(a).

2

In October 2019, the district court sentenced Z.T. to a controlling term of 12 months at a juvenile correctional facility. In addition, the district court imposed a six-month term of conditional release. The district court also ordered Z.T. to serve his juvenile sentence in Riley County consecutive to any outstanding sentences in Geary County. For Z.T.'s adult sentence, the district court imposed a controlling term of 19 months' imprisonment, to be suspended pending his successful completion of the juvenile sentence.

ANALYSIS

*Imposition of Consecutive Sentences*

On appeal, Z.T. contends that his juvenile sentence in Riley County is illegal under K.S.A. 2019 Supp. 22-3504(c)(1) because the district court did not have authority to run this sentence consecutive to his Geary County sentences. In response, the State argues that we do not have appellate jurisdiction because Z.T. received a presumptive sentence, citing K.S.A. 2019 Supp. 38-2380(b)(2)(A). Although we agree with the State regarding the length of the sentence imposed, we do have jurisdiction over the limited question of whether the district court had authority to order the Riley County sentence to run consecutively to the Geary County sentences.

Generally, we have jurisdiction to address whether a district court had authority to impose a sentence, even if the sentence imposed was for a presumptive term. *State v. Morningstar*, 299 Kan. 1236, 1237, 329 P.3d 1093 (2014). Likewise, in the criminal context, where K.S.A. 2019 Supp. 21-6820(c)'s jurisdictional bar applies, the Kansas Supreme Court has recognized that appellate courts have jurisdiction to review a claim to the extent that a defendant claims a sentence is illegal because it is not authorized by statute. See *State v. Quested*, 302 Kan. 262, 264, 352 P.3d 553 (2015). We find this reasoning applies equally to the RKJJC because the prohibition against challenging

3

presumptive sentences in K.S.A. 2019 Supp. 38-2380(b)(2)(A) is nearly identical to K.S.A. 2019 Supp. 21-6820(c)(1).

Whether Z.T.'s sentence is illegal is a question of law subject to unlimited review. *State v. Donahue*, 309 Kan. 265, 267, 434 P.3d 230 (2019). Illegal sentences include sentences that do not conform to the applicable statutory provisions. K.S.A. 2019 Supp. 22-3504(c)(1). At sentencing, Z.T. objected to the imposition of a consecutive sentence but he did not specifically argue that doing so would make his sentence illegal. Nevertheless, we have statutory authority to consider his argument for the first time on appeal because an illegal sentence may be corrected at any time. *State v. Sartin*, 310 Kan. 367, 375, 446 P.3d 1068 (2019).

Resolving this issue requires interpretation of the RKJJC, which involves a question of law subject to de novo. *State v. Alvarez*, 309 Kan. 203, 205, 432 P.3d 1015 (2019). The goal of statutory interpretation is to determine the Kansas Legislature's intent based on the language used in the statute. When a statute's text is plain and unambiguous, courts interpret the language as written, giving common words their common meanings. We are not to speculate about legislative intent nor are we to add something to a statute. *Nauheim v. City of Topeka*, 309 Kan. 145, 149-50, 432 P.3d 647 (2019). Here, we find no explicit language in the RKJJC regarding the imposition of consecutive sentences under the circumstances presented in this case.

In 2016, the Kansas Legislature revamped nearly all aspects of the RKJJC. See Smith, *SB 367 and Juvenile Justice Reform in Kansas: A Whole New World*, J.K.B.A. 16 (February 2017). Relevant to this case, the Legislature enacted K.S.A. 38-2391, which provides for the maximum jurisdiction of a district court following the disposition of an individual juvenile case. L. 2016, ch. 46, § 1; see K.S.A. 2019 Supp. 38-2302(u) (defining "overall case length limit"). Subsections (d) and (e) of K.S.A. 2019 Supp. 38-

4

2391 address two situations in which a district court must impose concurrent sentences in juvenile adjudications.

Subsection (d) provides that a district court must impose concurrent sentences when a juvenile has been adjudicated of multiple counts within the same case. Similarly, subsection (e) provides that a district court must impose concurrent sentences when the juvenile has been adjudicated of multiple cases simultaneously. It seems that these subsections would be unnecessary if the Legislature did not intend to give district courts the authority to impose consecutive sentences in at least some juvenile proceedings. However, K.S.A. 2019 Supp. 38-2391 is silent on the situation presented in this case and we find that other sections of the RKJJC do not address this situation.

Z.T. argues that the Kansas Supreme Court's decision in the case of *In re W.H.*, 274 Kan. 813, 57 P.3d 1 (2002), prohibits the imposition of consecutive juvenile sentences unless the district court is granted the authority to do so by statute. In *W.H.*, our Supreme Court found that a district court's authority to impose a consecutive sentence in a juvenile adjudication case must originate from statute—not from the common law. 274 Kan. at 823. Specifically, the court observed that "Kansas has . . . no history of court decisions with legislative acquiescence supporting an implied power to impose consecutive [juvenile] sentences where the statute is silent." 274 Kan. at 818.

The *W.H.* court also found that the Kansas Legislature's express inclusion of consecutive sentences only within the Kansas Sentencing Guidelines Act (KSGA) implied an intent to exclude consecutive sentences in juvenile cases. The court recognized that while the KSGA contained similar provisions to the Kansas Juvenile Justice Code (KJJC)—the predecessor to the RKJJC—only the KSGA "expressly empowers a district court to impose consecutive sentences." 274 Kan. at 823. Significantly, our Supreme Court concluded that if the Legislature had intended for

5

district courts to have the authority to impose consecutive sentences in juvenile cases, it would have stated so explicitly. 274 Kan. at 819-23.

Later, in *State v. Crawford*, 39 Kan. App. 2d 897, 185 P.3d 315 (2008), a panel of this court addressed whether a district court had the authority to run an adult sentence consecutive to a defendant's previously imposed juvenile sentence. Relying on *W.H.*, the panel held that a "court's power to impose consecutive sentences flows from statutory authority." 39 Kan. App. 2d at 897. The *Crawford* panel found that because there was no statutory authority given to district courts to impose consecutive sentences in juvenile proceedings, the district court had no authority to order the defendant to serve his adult sentence consecutive to his juvenile sentence. 39 Kan. App. 2d at 899-904.

As the State points out, when *W.H.* was decided in 2002, the KJJC did not refer to "concurrent" or "consecutive" sentences. Instead, it simply provided a sentencing placement matrix based on a juvenile's past and present offense history. See K.S.A. 38-16,129. We note that an amended version of that matrix is still in effect under the RKJJC. See K.S.A. 2019 Supp. 38-2369. Since the Legislature's enactment of K.S.A. 38-2391(d) and (e) in 2016, a district court is required to impose concurrent sentences when adjudicating multiple counts within the same case or when adjudicating multiple cases simultaneously. So, according to the State, if the Legislature had intended to prevent consecutive juvenile sentences altogether, it would not have mandated concurrent sentences in "only those two situations."

We agree with the State that the plain language of the RKJJC does not appear to prevent district courts from imposing consecutive sentences altogether. Nevertheless, the Kansas Supreme Court has not overruled its decision in *W.H.* and we are aware of no case in which it has indicated its intent to do so. Of course, we are duty bound to follow the precedent of our Supreme Court unless there is some indication it is departing from its previous position. *State v. Rodriguez*, 305 Kan. 1139, 1144, 390 P.3d 903 (2017).

6

Accordingly, we find that a district court's authority to impose consecutive juvenile sentences must be clearly granted by statute.

Even with the 2016 amendments, the RKJJC is still silent on whether a district court in one county may order a juvenile sentence to be served consecutive to a juvenile sentence previously imposed in another county. Although the Kansas Legislature could have—and perhaps should have—authorized a district court's authority to impose consecutive juvenile sentences under such circumstances, it did not do so. As indicated above, we are not to add something to a statute that was not included by the Legislature. Furthermore, whether to authorize consecutive sentences in juvenile proceedings and under what circumstances to do so are matters of public policy that would best be resolved by our Legislature instead of our courts. *In re Marriage of Hall*, 295 Kan. 776, 784, 286 P.3d 210 (2012) ("Courts should . . . 'leave the guidance of public policy through statutes to the legislature.'").

The Kansas Supreme Court's decision in *Quested* supports our conclusion. There, a district court ordered an adult sentence to be served consecutive to an adult sentence previously imposed in another Kansas county. Although the KSGA was silent on the district court's authority to impose a consecutive sentence under such circumstances, our Supreme Court concluded that the district court had common-law authority to impose the consecutive sentence based in part on decades-long precedent established by Kansas appellate courts and on legislative acquiescence to that precedent. 302 Kan. at 268-79 (citing *State v. Chronister*, 21 Kan. App. 2d 589, 903 P.2d 1345 [1995]). In distinguishing *W.H.* from *Quested*, our Supreme Court found that the reasoning of *W.H.* is limited to juvenile offenders. It also noted that there were no cases "that recognized any authority, common law or otherwise, for imposing consecutive juvenile sentences." *Quested*, 302 Kan. at 278.

7

Consequently, we find that the district court did not have authority to order the Riley County juvenile sentence to run consecutive to Z.T.'s outstanding Geary County juvenile sentences. As a result, that portion of Z.T.'s sentence was illegal and must be vacated as a matter of law.

*Imposition of Term of Conditional Release*

Z.T. also contends that the district court did not have authority to impose a term of conditional release as part of his juvenile sentence. Whether the district court had statutory authority to impose the conditional release term requires statutory interpretation. Again, because statutory interpretation is a question of law, our review de novo. *Alvarez*, 309 Kan. at 205.

Unlike some juvenile offender categories within K.S.A. 2019 Supp. 38-2369(a), the Chronic Offender I category does not provide for an aftercare term. See K.S.A. 2019 Supp. 38-2369(a)(3)(A). Z.T. claims the term "aftercare" is synonymous with "conditional release" and, because he was identified as a Chronic Offender I for sentencing, the district court had no authority to order the conditional release term.

But we need not resolve this issue because K.S.A. 2019 Supp. 38-2369(b) gives district courts discretion to impose a conditional release term under any offender category: "If the court elects, a period of conditional release may also be ordered *pursuant to K.S.A. 38-2361*, and amendments thereto. The period of conditional release shall be limited to a maximum of six months and shall be subject to graduated responses." (Emphasis added.)

In turn, K.S.A. 2019 Supp. 38-2369(b) directs district courts to K.S.A. 2019 Supp. 38-2361, titled "Sentencing alternatives." K.S.A. 2019 Supp. 38-2361 allows district courts to impose one or more sentencing alternatives for a fixed period. One of these

8

alternatives provides that if a district court finds that a juvenile is eligible for commitment in a juvenile facility and opts to commit him or her, then, "[i]f the court elects, a period of conditional release pursuant to K.S.A. 38-2369, and amendments thereto, may *also* be ordered." (Emphasis added.) K.S.A. 2019 Supp. 38-2361(a)(12). The common meaning of "also" is "in addition." Webster's New World College Dictionary 41 (4th ed. 2008). Thus, the district court had the authority to impose 6 months of conditional release in addition to Z.T.'s 12-month sentence.

Affirmed in part, vacated in part, and remanded with directions.